979 P.2d 85

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Kenneth K. MIYASHIRO, Defendant–Appellant.**

**No. 21090.**

Intermediate Court of Appeals of Hawai'i.

May 24, 1999.

Jeff Arakaki, (Walter R. Schoettle, Honolulu, on the brief), for defendant-appellant.

Loren J. Thomas, Deputy Prosecuting Attorney, City and County of Honolulu, for plaintiff-appellee.

BURNS, C.J., WATANABE, and ACOBA, JJ.

Opinion of the Court by WATANABE, J.

Defendant–Appellant Kenneth K. Miyashiro (Defendant) appeals from the Judgment of the Circuit Court of the First Circuit (the circuit court) entered on September 26, 1997, following a July 14, 1997 jury verdict convicting him of: two counts of Promoting a Dangerous Drug in the Second Degree, in violation of Hawai'i Revised Statutes (HRS) § 712–1242(1)(c) (1993) [1] (Counts I and II); one count of Promoting a Dangerous Drug in the First Degree, in violation of HRS § 712–1241(1)(b)(ii)(A) (1993) [2] (Count III); one count of Promoting a Dangerous Drug in the Third Degree, in violation of HRS § 712–1243 (1993) [3] (Count IV); one count of Unlawful Use of Drug Paraphernalia, in violation of HRS § 329–43.5(a) (1993) [4] (Count V); and one count of Possession of a Firearm by a Person Convicted of Certain Crimes, in violation of HRS § 134–7(b) and (h) (Supp. 1998) [5] (Count VI).

1. Hawai'i Revised Statutes (HRS) § 712–1242(1)(c) (1993) provides:

**Promoting a dangerous drug in the second degree.** (1) A person commits the offense of promoting a dangerous drug in the second degree if the person knowingly:

\* \* \*

(c) Distributes any dangerous drug in any amount.

2. HRS § 712–1241(1)(b)(ii)(A) (1993) provides:

**Promoting a dangerous drug in the first degree.** (1) A person commits the offense of promoting a dangerous drug in the first degree if the person knowingly:

(b) Distributes:

\* \* \*

(ii) One or more preparations, compounds, mixtures, or substances of an aggregate weight of:

(A) One-eighth ounce or more, containing methamphetamine, heroin, morphine, or cocaine or any of their respective salts, isomers, and salts of isomers[.]

3. HRS § 712–1243 (1993) provides:

**Promoting a dangerous drug in the third degree.** (1) A person commits the offense of promoting a dangerous drug in the third degree if the person knowingly possesses any dangerous drug in any amount.

(2) Promoting a dangerous drug in the third degree is a class C felony.

4. HRS § 329–43.5(a) (1993) provides:

**Prohibited acts related to drug paraphernalia.** (a) It is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this chapter. Any person who violates this section is guilty of a class C felony and upon conviction may be imprisoned pursuant to section 706–660 and, if appropriate as provided in section 706–641, fined pursuant to section 706–640.

5. HRS § 134–7 (Supp.1998) provides, in relevant part, that effective until June 29, 1999:

**Ownership or possession prohibited, when; penalty.** ....

(b) No person who is under indictment for, or has waived indictment for, or has been bound over to the circuit court for, or has been convicted in this [s]tate or elsewhere of having committed a felony, or any crime of violence, or an illegal sale of any drug shall own, possess, or control any firearm or ammunition therefor.

Defendant argues that the circuit court reversibly erred in: (1) excluding evidence offered to explain the facts and circumstances of his prior felony conviction and his reason for pleading guilty to the prior felony; and (2) responding affirmatively to the following question posed by the jury: "IS UNANIMITY REQUIRED IN THE DECISION OF WHETHER ENTRAPMENT OCCURRED REGARDING COUNTS I—III? I.E., ¹²⁄₁₂ JURORS."

While we disagree with Defendant's arguments, we conclude that the circuit court's response to the jury's question may have misled the jurors into believing that they were required to return a verdict of guilty if they could not unanimously agree on the entrapment defense. Accordingly, we vacate that part of the September 26, 1997 Judgment that convicted and sentenced Defendant on Counts I, II, and III and remand for a new trial as to those counts. In all other respects, the Judgment is affirmed.

## BACKGROUND

In January 1995, Officer Michael Tsuda (Officer Tsuda) and other officers from the Honolulu Police Department were assigned to investigate an anonymous complaint that a person named Alvin Chun (Chun) was dealing narcotics out of his residence in Waipahu and that Chun's two narcotics suppliers were Joe Valenti and a male identified as "Kenji." After doing a little surveillance work, Officer Tsuda determined that Defendant was "Kenji."

Officer Tsuda testified that he subsequently arranged, through recorded telephone conversations, to purchase narcotics from Defendant on three separate occasions. On February 10, 1995, Officer Tsuda arranged to buy one-half gram of narcotics for $100. On February 14, 1995, Officer Tsuda arranged to purchase one gram of narcotics for $180. On each of these occasions, Officer Tsuda drove to Defendant's residence, parked his unmarked car with the driver's side facing the residence, and called out, "Kenji." Thereafter, Defendant walked over

to Officer Tsuda's car, counted the pre-recorded money provided by Officer Tsuda, and handed Officer Tsuda a bindle of crystal methamphetamine. On February 22, 1995, Officer Tsuda called Defendant to arrange a purchase of an "eight ball" (one-eighth ounce of narcotics) for $1,100. On February 23, 1995, after reconfirming the purchase, Officer Tsuda arrived at Defendant's residence for the third drug buy. Defendant invited Officer Tsuda into the residence and explained that "the stuff" had not yet arrived. After unsuccessfully trying to contact one source, Defendant took $1,100 from Officer Tsuda, left the house in a pick-up truck, and returned about ten minutes later with two plastic packets containing a crystal-like substance. Defendant removed about one-half gram for himself and handed the rest to Officer Tsuda.

On March 1, 1995, as a result of the foregoing drug buys, police officers arrested Defendant for possession of dangerous drugs. The police officers also executed a search warrant that they had obtained for Defendant's person, truck, and residence. The search of Defendant's residence resulted in the recovery of a glass pipe containing a milky white substance, a scale, a propane torch, and a rifle. No drugs, other than the "milky white residue" found in the glass pipe, later identified as crystal methamphetamine, were recovered. None of the pre-recorded money used in the three transactions was recovered, and no records or other evidence of drug dealing were found.

Defendant was thereafter offered a plea agreement: In exchange for a reduction of the charges against him, Defendant would cooperate with police and "provid[e] information." Defendant indicated that he wished to confer with a public defender about the plea agreement and Officer Tsuda allowed Defendant some time to do so. However, when Defendant failed to contact Officer Tsuda about Defendant's decision on the plea agreement, Officer Tsuda concluded that Defendant was unreliable.

* * *

(h) Any person violating subsection (a) or (b) shall be guilty of a class C felony; provided that any felon violating subsection (b) shall be guilty of a class B felony. . . .

On February 18, 1997, a grand jury indicted Defendant on the six counts for which Defendant was ultimately convicted. Trial commenced on July 7, 1997.

Defendant's defense at trial was entrapment. Defendant testified that he initially met Officer Tsuda two to five days prior to the first drug buy on February 10, 1995. According to Defendant, Officer Tsuda drove up to Defendant's residence and called out two or three times from the street, "Kenji, Kenji[.]" Defendant went out to investigate who was calling him but did not recognize Officer Tsuda. Officer Tsuda stated that he was "Al Chun's good friend" and worked with Chun. Officer Tsuda also represented that Chun "did not have anything so [Chun] told [Officer Tsuda] to ask [Defendant] if [Officer Tsuda] had something." Defendant informed Officer Tsuda that he didn't "solicit, ... just share among ourselves." However, because Chun had previously done a favor for Defendant and Officer Tsuda kept insisting that he and Defendant had met before, Defendant eventually facilitated the sale to Officer Tsuda. Defendant stated that he would not have engaged in the February 10, 14, and 23, 1995 transactions if he had not met Officer Tsuda prior to February 10, 1995. Officer Tsuda denied ever meeting Defendant before February 10, 1995 or purchasing narcotics in an unrecorded sale from Defendant.

On July 14, 1997, a jury found Defendant guilty and convicted him of all six charges. On September 26, 1997, judgment was filed and Defendant was sentenced to concurrent terms of five years' probation for Counts I, II, IV, V, and VI and ten years' probation for Count III. A timely notice of appeal was filed on October 27, 1997.

## STANDARDS OF REVIEW

### I. *Evidentiary Issues*

■ Where the evidentiary ruling at issue concerns admissibility based on relevance, under Hawai'i Rules of Evidence (HRE) Rules 401 and 402, the proper standard of appellate review is the right/ wrong standard.

*State v. Richie*, 88 Hawai'i 19, 36–37, 960 P.2d 1227, 1244–45 (1998) (brackets, internal quotation marks, and footnote omitted) (quoting *State v. Arceo*, 84 Hawai'i 1, 11, 928 P.2d 843, 853 (1996)).

### II. *The Circuit Court's Response to a Jury's Communication*

■ "When jury instructions or the omission thereof are at issue on appeal, the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading." *State v. Cullen*, 86 Hawai'i 1, 8, 946 P.2d 955, 962 (1997) (internal quotation marks omitted) (quoting *State v. Kinnane*, 79 Hawai'i 46, 49, 897 P.2d 973, 976 (1995)). Because the circuit court's response to a jury communication is the functional equivalent of an instruction, the standard of review for jury instructions also applies to reviewing a trial court's answers to jury communications.

### III. *Plain Error*

■ "We may recognize plain error when the error committed affects substantial rights of the defendant." *Cullen*, 86 Hawai'i at 8, 946 P.2d at 962 (quoting *Arceo*, 84 Hawai'i at 33, 928 P.2d at 875).

## DISCUSSION

### I. *The Exclusion of Certain Evidence Offered to Explain the Facts and Circumstances of Defendant's Prior Felony Conviction and Defendant's Reason for Pleading Guilty to the Prior Felony*

Count VI of the grand jury indictment charged Defendant with Possession of a Firearm by a Person Convicted of Certain Crimes, in violation of HRS § 134–7(b) and (h) (Felon in Possession of a Firearm), which provides, in relevant part, as follows:

(b) No person who ... has been convicted in this [s]tate or elsewhere of having committed a felony, or any crime of violence, or an illegal sale of any drug shall own, possess, or control any firearm or ammunition therefor.

\* \* \*

(h) Any person violating subsection (a) or (b) shall be guilty of a class C felony; provided that any felon violating subsection (b) shall be guilty of a class B felony. . . .

In order to establish that Defendant had committed the foregoing offense, Plaintiff–Appellee State of Hawaiʻi (the State) was required to prove, beyond a reasonable doubt, that Defendant "ha[d] been convicted in this [s]tate or elsewhere of having committed a felony, or any crime of violence, or an illegal sale of any drug[.]" HRS § 134–7(b); *see also State v. Buffalo*, 4 Haw.App. 646, 648, 674 P.2d 1014, 1017 (1983), *cert. denied*, 67 Haw. 686, 744 P.2d 781 (1984). To establish this element, the State called James Wilbur May, a probation officer for the First Circuit Court, who testified that he had supervised Defendant for about six months while Defendant was on probation following his conviction on three counts of Theft in the First Degree and one count of Theft in the Second Degree. Theft in the first degree is a class B felony, HRS § 708–830.5 (1993), and theft in the second degree is a class C felony. HRS § 708–831 (1993). The State also offered into evidence, without objection, certified, sealed copies of the indictment charging Defendant with the theft felonies, Defendant's written no-contest plea to the charges, and the judgment of conviction and sentence for the felonies.

Defendant contends that because evidence of his prior felony convictions was admitted, the circuit court should have allowed him to explain the facts and circumstances of his prior theft convictions, as well as his reason for pleading guilty, in order to mitigate the apparent effect of the convictions on his credibility.

Our review of the record reveals, however, that the circuit court did allow Defendant to explain the facts and circumstances of his prior convictions, as reflected in the following testimony:

[DEFENDANT:] My prior theft charge happened in 1986. At that time, I was a car sales representative, representative for Toyota City. And I guess the—one of the managers and I didn't agree on—well, we had a—personalitywise [sic], I guess we had a clash among [sic] each other. And actually, what—to make the story short, he fired me for the wrong reason. He thought I was what we call in the car business "curbing," selling the car on the outside, but which I didn't.

And there was proof that I didn't do that, and on that basis, they fired me. The vice-president I talked to, he said why don't you come back and go at [sic] another dealership since we don't get along, but at that time, I was kind of bittered [sic] for them firing me for the wrong reason, so I declined his offer and—I decline [sic] his offer.

And I was pretty upset too the way he treated me so I knew there would be consequences on my customers because we coordinate—after we sell a car, we coordinate where the car should go for air condition, for rustproofing, for other accessories, but I wasn't there to coordinate the situation so I guess it was kind of a chaos and the customer complained and everything.

And I do believe that I was wrong in that aspect. I should have gone back even though I'm not working for the company and trying to take care [sic] my customers, at least settle everything with them and—but at that time, I was pretty angry so I said forget about all these guys and—

[DEFENSE COUNSEL:] All right. The charge against you was theft and you had four counts of theft, right?

[DEFENDANT:] Yes, sir.

Defendant was further allowed to testify that, although he was accused of stealing in the prior case, he did not steal anything. Defendant also explained about his prior guilty pleas that resulted in the theft convictions as follows:

[DEFENSE COUNSEL:] Do you believe that you were guilty of those charges of theft?

[DEFENDANT:] No, sir.

[DEFENSE COUNSEL:] Did you plead guilty?

[DEFENDANT:] Yes, I did.

[DEFENSE COUNSEL:] Why did you do that?

[DEFENDANT:] Well, the—well, first of all, the lawyer—I couldn't talk—the Public Defender Office, they called me one week before the trial.

At that point, the deputy prosecuting attorney objected to Defendant's testimony on grounds of relevance. Although defense counsel argued that the testimony was relevant to show that Defendant had received ineffective assistance of counsel during the prior proceedings,[6] the circuit court sustained the objection, explaining:

> I'm not convinced that's an element of proof in this case. It's really an issue, an issue of effective assistance of counsel. I don't think this jury is [sic] any position to determine that question in any event.

An evidentiary ruling precluding the admission of evidence on relevance grounds is reviewed on appeal under the right/wrong standard. *State v. Richie*, 88 Hawai'i at 36–37, 960 P.2d at 1244–45. Generally, "[a]ll relevant evidence is admissible" and "[e]vidence which is not relevant is not admissible." Hawai'i Rules of Evidence (HRE) Rule 402 (1993). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." HRE Rule 401.

■ A prior felony conviction is an essential element of the Felon in Possession of a Firearm offense. *See* HRS § 134–7(b). Therefore, evidence that Defendant had previously been convicted of a felony was clearly relevant. However, evidence that Defendant may have received ineffective assistance of counsel during the prior proceeding that led to Defendant's conviction on felony theft charges would not have any bearing on the validity of the felony theft conviction. The trial in this case was not the proper forum to relitigate or collaterally attack the validity of the prior conviction. Accordingly, the circuit court did not err in precluding further evidence that Defendant may have received ineffective assistance of counsel during his prior case. *Accord Brooks v. State*, 24 Md.App. 334, 330 A.2d 670, 675 (Ct.Spec.App.1975) (holding that "[i]n order to restore the credibility of a witness so attacked, *the party may not give evidence that he was not guilty of the crime, since the conviction is conclusive evidence of his guilt*, but, although good ground may be assigned and authority found for a different conclusion, the sounder and fairer rule seems to be that the witness may be allowed to explain the circumstances of the offence [sic], if in extenuation of the act and in mitigation of its effect.") (emphasis in original; internal quotation marks omitted) (quoting *Donnelly v. Donnelly*, 156 Md. 81, 143 A. 648, 650 (1928)).

## II. *Whether the Circuit Court Plainly Erred in Its Response to Jury Communication No. 1*

### A.

■ The only defense raised by Defendant in this case was the affirmative defense of entrapment.[7] Entrapment is a "nonexculpatory defense" which differs from other types of defenses because "it permits a defense even where the actor by all measures de-

---

6. In support of the ineffective assistance of counsel claim, defense counsel made the following offer of proof:

   > [Defendant's] attorney told [Defendant] that [Defendant] would get a DAG [ (Deferred Acceptance of Guilty) ] plea so [Defendant] pleaded guilty and after [Defendant] changed his plea, they told him he wasn't qualified or wasn't eligible for a DAG plea.
   > * * *
   > [Defendant's attorney] told [Defendant] he wasn't eligible and then [Defendant] couldn't withdraw his plea.

7. HRS § 702–237 (1993) provides, in relevant part:

   > **Entrapment.** (1) In any prosecution, it is an affirmative defense that the defendant engaged in the prohibited conduct or caused the prohibited result because the defendant was induced or encouraged to do so by a law enforcement officer, or by a person acting in cooperation with a law enforcement officer, who, for the purpose of obtaining evidence of the commission of an offense, either:
   > (a) Knowingly made false representations designed to induce the belief that such conduct or result was not prohibited; or
   > (b) Employed methods of persuasion or inducement which created a substantial risk that the offense would be committed by persons other than those who are ready to commit it.

serves condemnation and punishment." 2 P. Robinson, *Criminal Law Defenses* § 201(a), at 460 (1984). As the Commentary on HRS § 702–237, the Hawai'i Penal Code provision defining the entrapment defense, notes in part:

The rationale for providing a defense based on entrapment does not reside in the fact that entrapped defendants are less culpable or dangerous than those who formulate their intent without outside inducement. If that were the case, a defense based on similar inducement and encouragement by private citizens would have to be recognized. The real basis for the defense of entrapment is a purpose to deter improper conduct on the part of law enforcement officials. The harm done by increasing the risk of penal conduct by otherwise innocent persons, the improper utilization of police resources, the suspicion that entrapment tactics are the result of personal malice, and injury to the stature of law enforcement institutions, all contribute to condemn entrapment. Providing a defense to conduct which would otherwise be a basis for penal liability because of improper tactics by law enforcement officials is an extreme measure, but no other, more effective, method presents itself.

\* \* \*

The Code makes entrapment an affirmative defense. It is not unfair to require a defendant, who desires to escape from penal liability not on the basis of the defendant's own lack of culpability but rather on the basis of the additional culpability of law enforcement officials with respect to their official conduct, to bear the burden of proving by a preponderance of the evidence the excusing condition.

In other words, entrapment is a defense in which a defendant who has committed all the elements of a proscribed offense claims that he or she should not be convicted and punished because of the wrongful conduct of law enforcement officials. *See State v. Reed,* 77 Hawai'i 72, 82, 881 P.2d 1218, 1228 (1994) ("The focus is on the police conduct and its probable effect on a 'reasonable person.' ").

In instructing the jury on this affirmative defense, the circuit court stated as follows:

[Defendant] has raised the affirmative defense of entrapment as to the offenses charged in counts one, two, and three of the indictment. This defense, if proved, requires you to find [Defendant] not guilty.

[Defendant] must prove an affirmative defense by a preponderance of the evidence. This means that [Defendant] must prove that it is more likely than not or more probable than not that entrapment occurred.

In determining whether [Defendant] has proved an affirmative defense by a preponderance of the evidence, you must consider all of the evidence which has been presented to you regardless of who presented it.

Entrapment is an affirmative defense to Promoting a Dangerous Drug in the Second Degree as charged in Counts I and II and Promoting a Dangerous Drug in the First Degree as charged in Count III.

A person is entrapped if he [or she] engaged in the prohibitive conduct or caused the prohibitive result because he [or she] was induced or encouraged to do so by a law enforcement officer or by a person acting in cooperation with a law enforcement officer who for the purpose of obtaining evidence of the commission of an offense employed methods of persuasion or inducement which created substantial risk that the offense would be committed by persons other than those who are ready to commit it.

There are two elements of this defense, each of which [Defendant] must prove by a preponderance of the evidence. These two elements are:

1. That [Defendant] engaged in the prohibitive conduct or caused the prohibitive result because he was induced or encouraged to do so by a law enforcement officer or by a person acting in cooperation with a law enforcement officer; and. [sic]

2. That the law enforcement officer or a person acting in cooperation with a law enforcement officer did for the purpose of obtaining evidence in the commission of an offense, employ methods of persuasion or inducement which created a substantial risk that the offense would be committed

by persons other than those who are ready to commit it.

As to any of the offenses charged in Counts I, II, and III of the indictment, if [Defendant] has proved both elements of entrapment by a preponderance of the evidence—that is, it is more likely than not or more probable than not that entrapment occurred, then you must find [Defendant] not guilty. If [Defendant] has not proved by a preponderance of the evidence both elements of entrapment, then the defense of entrapment does not apply.

Whether or not [Defendant] may have known a person or persons involved in the drug culture does not establish that he could not be or was not entrapped.

An offer to buy narcotics in and of itself is not a method which creates a substantial risk that the offense would be committed by persons other than those ready to commit it.

The circuit court also instructed the jury that (1) it "must consider all of the instructions as a whole and consider each instruction in the light of all of the others"; (2) it must presume "[Defendant] is innocent of the charges against him" and that "[t]his presumption remains ... throughout the trial ... unless and until the Prosecution proves [Defendant] guilty beyond a reasonable doubt. The presumption of innocence ... places upon the Prosecution the duty of proving every material element of the offense charged against [Defendant] beyond a reasonable doubt"; and (3) "verdict[s] must be unanimous."

After commencing deliberations, the jury sent to the judge Jury Communication No. 1, which posed the following questions:

(1) IS UNANIMITY REQUIRED IN THE DECISION OF WHETHER ENTRAPMENT OCCURRED REGARDING COUNTS I—III? I.E., 12/12 JURORS.

(2) IF WE ESTABLISH ENTRAPMENT OCCURED [sic] REGARDING COUNT I, SHOULD OR COULD WE CARRY THAT ASSUMPTION/FINDING TO COUNTS II AND III? OR WITH ANY COMBINATION OF COUNTS?

Upon receiving the jury communication, the circuit court convened trial counsel. The following colloquy then ensued:

THE COURT: * * * [W]hat's the State's position on the [c]ourt's proposed responses[?]

[DEPUTY PROSECUTOR]: No objection, Your Honor.

THE COURT: And [Defense Counsel?]

[DEFENSE COUNSEL]: No objection as to number one, but I do object to number two.

The circuit court then submitted the following response to the jury:

1. As to your first question, the question [sic] is yes.

2. As to your second question, if the jury determines that [Defendant] was entrapped as to Count I, the weight and effect of that finding as to any other count is for the jury to decide.

Shortly after the circuit court judge responded to the jury communication, the jury sent word that it had reached a verdict.

At that point defense counsel addressed the court as follows:

In view of the fact that this communication number one, the quickness that the jury reached the verdict, I fear we may have misled the jury in the answer to question number one into believing that if it was not unanimous there was no entrapment so that they may have taken a vote on entrapment and they came back less than unanimous and then they said okay, that disposes of entrapment. And there may be jurors who believe there was entrapment but[,] because of our answer to question number one[,] feel that doesn't matter anymore. So I think that we need to—so if with [sic] we brought them in and they delivered a verdict and it was guilty, I would then request that they be polled to be asked whether or not they found, I believe, entrapment had been proven by a preponderance of the evidence which would then disclose how the jury stands. So rather than do that, Your Honor, I think, perhaps, we can offer a supplemental answer to number one and say that it's also necessary for them to be unanimous in

the finding that there was no entrapment before they can find [Defendant] guilty. The circuit court denied defense counsel's request for voir dire or polling of the jury on this point, and the verdict convicting Defendant as charged was received in open court.

### B.

On appeal, Defendant contends that the circuit court committed plain error when it responded affirmatively to question No. 1 to Jury Communication No. 1. Defendant argues that "[i]t is not necessary that the jury be unanimous with respect to the defense of entrapment .... only ... that they [sic] be unanimous with respect to their [sic] *verdict.*" (Emphasis in original.)

Defendant's argument raises a question of first impression in Hawai'i: What is the effect of a lack of jury unanimity as to an affirmative defense such as entrapment? This issue was discussed but not resolved by the United States Supreme Court in *McKoy v. North Carolina,* 494 U.S. 433, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990), a case which addressed the unanimity requirement of North Carolina's capital sentencing scheme. The North Carolina requirement precluded a jury deciding whether to impose a death penalty sentence from considering any mitigating circumstance that the jury did not unanimously find to be present. In striking down the requirement as unconstitutional, the Supreme Court observed:

The unanimity requirement ... allows one holdout juror to prevent the others from giving effect to evidence they believe calls for a " 'sentence less than death.' " Moreover, even if all 12 jurors agree that there are *some* mitigating circumstances, North Carolina's scheme prevents them from giving effect to evidence supporting any of those circumstances in their deliberations ... unless they unanimously find the existence of the *same* circumstance. This is the precise defect that compelled us to strike down the Maryland scheme in *Mills [v. Maryland,* 486 U.S. 367, 374, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988) ]. Our decision in *Mills* was not limited to cases in which the jury is *required* to impose the death penalty if it finds that aggravating

circumstances outweigh mitigating circumstances or that no mitigating circumstances exist at all. Rather, we held that it would be the "height of arbitrariness to allow *or* require the imposition of the death penalty" where 1 juror was able to prevent the other 11 from giving effect to mitigating evidence.

494 U.S. at 439–40, 110 S.Ct. 1227 (citations omitted; emphases in original).

North Carolina had argued that the unanimity requirement was necessary to ensure the reliability of the mitigating evidence, *id.* at 441–42, 110 S.Ct. 1227 and had compared the requirement to the burden imposed on a defendant to prove, by a preponderance of the evidence, the existence of an affirmative defense, a burden upheld by the Supreme Court in *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). Rejecting North Carolina's argument, the Supreme Court noted initially that the validity of a capital sentencing procedure under the Eighth Amendment was not at issue in *Patterson. McKoy,* 494 U.S. at 442, 110 S.Ct. 1227. The Court also remarked:

*Mills* requires that *each* juror be permitted to consider and give effect to mitigating evidence when deciding the ultimate question whether to vote for a sentence of death. This requirement means that ... *each* juror must be allowed to consider all mitigating evidence in deciding ... whether aggravating circumstances outweigh mitigating circumstances, and whether the aggravating circumstances, when considered with any mitigating circumstances, are sufficiently substantial to justify a sentence of death.... [S]uch consideration of mitigating evidence may not be foreclosed by one or more jurors' failure to find a mitigating circumstance[.]

*Id.* at 442–43, 110 S.Ct. 1227 (emphases added).

In a dissenting opinion joined by Chief Justice Rehnquist and Justice O'Connor, Justice Scalia argued that the majority's opinion appeared to contradict prior jurisprudence in which the Court had approved schemes imposing a jury unanimity requirement

in contexts of great importance to the criminal defendant—for example, as a condition to establishing the defense of self-defense in a capital murder case, as a condition to establishing the defense of extreme emotional disturbance in a second-degree murder case, and as a condition to establishing the defense of insanity in a second-degree murder case.

*Id.* (Scalia, J., dissenting) at 467, 110 S.Ct. 1227 (citations omitted). In a concurring opinion, Justice Blackmun disagreed that the affirmative defense cases cited by the dissent were on point:

[T]he dissent's analogy to the affirmative-defense cases confuses the concepts of unanimity and burden of proof. To say that the burden of proof may be placed upon the defendant says nothing at all about the situation in which some jurors, but not others, believe that the burden has been satisfied. The dissent's analogy presumes that once the elements of an offense have been proved, the jury's failure to agree as to an affirmative defense results in a conviction (just as a North Carolina jury's failure to agree as to the presence of a given mitigating factor creates a "finding" that the factor is not present); but our cases do not say that, and it is not at all clear that a conviction, rather than a hung jury, would be the outcome. See *State v. Harris,* 89 R.I. 202, 207, 152 A.2d 106, 109 (1959) (although the defendant bears the burden of proof as to insanity, "there is a vast difference between an instruction as to the persuasiveness of evidence and an instruction as to *agreement.* If the jury could not agree upon defendant's sanity then no verdict could be reached") (emphasis in original). The peculiar infirmity of the North Carolina sentencing procedure is not simply that it places the burden of proving mitigation upon the defendant, but that all disagreements among the jurors as to whether that burden has been satisfied must be resolved in favor of the [s]tate.

*Id.* (Blackmun, J., concurring) at 451, 110 S.Ct. 1227. In a footnote, Justice Scalia disagreed with Justice Blackmun's observation:

JUSTICE BLACKMUN finds the analogy to affirmative defenses less than persuasive because he says that "it is not at all clear" that "the jury's failure to agree as to an affirmative defense results in a conviction," "rather than a hung jury." ... It would be interesting to know the basis for that doubt with respect to the jurisdictions I have cited. Under New York law, for example, the jury's verdict—whether guilty or not guilty—must be unanimous. See N.Y.Crim. Proc. Law § 310.80 (McKinney 1982). When an affirmative defense is raised, "the court must carefully instruct the jury that they must be satisfied of defendant's guilt of the offense beyond a reasonable doubt before they may consider the affirmative defense." Practice Commentary following N.Y. Penal Law § 25.00, p. 77 (McKinney 1987); see *People v. Morris,* 68 App. Div.2d 893, 413 N.Y.S.2d 757 (1979); 31 N.Y. Jur.2d, Criminal Law § 188, pp. 335–336 (1983) ("[G]uilt must be established beyond a reasonable doubt before the jury can even consider an affirmative defense"). If the jurors follow their instructions, it would appear that the jury that has considered but not unanimously found an affirmative defense must return a verdict of guilty. One wonders what proportion of the jury JUSTICE BLACKMUN believes is necessary to find an affirmative defense (if not all 12) in those [s]tates where the law does not explicitly specify a majority.

*Id.* (Scalia, J., dissenting), 467–68 n. 1., 110 S.Ct. 1227.

After considering the differing views expressed by the two justices, we conclude that Justice Blackmun's view as to the nature of an affirmative defense is more consistent with a criminal defendant's "inviolable right" to a unanimous jury verdict as to a charged offense, as subsumed within the Sixth Amendment to the United States Constitution,[8] *see Andres v. United States,* 333 U.S.

8. The Sixth Amendment to the United States Constitution provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the [s]tate and district wherein the crime shall have been committed[.]"

740, 748, 68 S.Ct. 880, 92 L.Ed. 1055 (1948), as "guaranteed by article I, sections 5 [9] and 14 [10] of the Hawai'i Constitution," *Arceo*, 84 Hawai'i at 30, 928 P.2d at 872 (footnotes added), and as set forth in Hawai'i Rules of Penal Procedure (HRPP) Rule 31(a) (1995).[11]

Justice Scalia's conclusion—that the failure of a jury to unanimously agree on an affirmative defense must result in a conviction—is premised on his view that in cases where an affirmative defense is raised, jurors must be instructed to determine a "defendant's *guilt* of the offense beyond a reasonable doubt before they may consider the affirmative defense." *McKoy*, 494 U.S. at 467 n. 1, 110 S.Ct. 1227 (Scalia, J., dissenting) (emphasis added) (citing *People v. Morris*, 68 A.D.2d 893, 413 N.Y.S.2d 757 (App.Div.1979)). In our view, however, a defendant's guilt is the ultimate finding that a jury must make after determining whether the defendant has committed all the elements of the offense charged and considering any affirmative defenses raised. In other words, each juror must individually determine whether all the elements of an offense have been established beyond a reasonable doubt and, if so, whether the defendant has established, by a preponderance of the evidence, the existence of the affirmative defense before determining the ultimate issue of the defendant's guilt.

Therefore, if all the jurors unanimously believed that the elements of the charged offense have *not* been proved beyond a reasonable doubt, the defendant would be entitled to an acquittal. If all the jurors unanimously believed that the elements of the charged offense have been proved beyond a reasonable doubt but the affirmative defense has not been established by a preponderance of the evidence, a guilty verdict should be returned. On the other hand, if the jurors unanimously agreed that the elements of the charged offense have been proved beyond a

reasonable doubt and that the affirmative defense has been established by a preponderance of the evidence, the defendant would be entitled to an acquittal. Finally, if the jurors unanimously agreed that all the elements of the charged offense have been proved beyond a reasonable doubt but are unable to reach unanimous agreement as to the affirmative defense of entrapment, no unanimous verdict can be reached as to the charged offense because some jurors would vote for conviction and others for acquittal. In such instance, a mistrial would have to be declared due to the hung jury. *Accord State v. Harris*, 89 R.I. 202, 152 A.2d 106, 109 (1959) ("If the jury could not agree upon defendant's [affirmative defense of] sanity then no verdict could be reached."); *People v. McIntyre*, 222 Cal.App.3d 229, 271 Cal.Rptr. 467, 469 (1990).

In *McIntyre*, a case that also involved the entrapment defense, the trial "court had instructed the jury that they had to find defendant guilty before considering the entrapment defense." *Id.* at 469. During deliberations, the jury sent the following note to the trial court:

> We believe that we have reached an impasse regarding the issue of entrapment.
>
> We overwhelmingly reject entrapment as a defense. However, it is not unanimous.
>
> We agree unanimously that the defendant is guilty to count 1 and not guilty to count 2.
>
> We unanimously agree to defendant's guilt to the lesser charged [sic] maintained in count 2 of possession of marijuana.

271 Cal.Rptr. at 468 (internal quotation marks omitted). After polling the jury regarding its verdicts for counts 1 and 2 and determining that two jurors believed that the defendant had been entrapped,[12] the trial

---

9. Article I, section 5 of the Hawai'i Constitution provides, in relevant part: "No person shall be deprived of life, liberty or property without due process of law[.]"

10. Article I, section 14 of the Hawai'i Constitution provides, in relevant part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial by an impartial jury of the district wherein the crime shall have been committed[.]"

11. Hawai'i Rules of Penal Procedure Rule 31(a) (1995) provides, in part, that "[t]he verdict shall be unanimous, unless otherwise stipulated to by the parties."

12. On appeal, the California Court of Appeal of the Fourth District, Division 2 noted that "[t]he polling of the jury in this manner was clearly improper. While it is proper to question a jury on the probability they may reach agreement

**500**

court "sent the jury back out" and instructed it to " 'sign the appropriate forms and come on back.' " *Id.* at 469. Shortly, thereafter, the jury returned a guilty verdict as to count 1. *Id.*

On appeal, the California Court of Appeal of the Fourth District, Division 2 reversed the judgment of conviction and remanded the case for a new trial. The court reasoned:

> A criminal defendant is entitled to a unanimous jury verdict. Each juror must vote for and acquiesce in the verdict.
>
> * * *
>
> In the present case, two jurors found that defendant had proved entrapment by a preponderance of the evidence. CALJIC No. 4.60, which was read to the jury, states, "If you find by a preponderance of the evidence that [entrapment] has been established, the defendant is entitled to a verdict of acquittal." Under this jury instruction, the two jurors who believed entrapment existed should have voted for acquittal if further deliberations proved fruitless; therefore, there was not a unanimous verdict on count I.
>
> While we have found no authority regarding this issue, we determine that the court was correct in its position that all 12 jurors must believe the entrapment defense before defendant could be found not guilty of count I. However, the court erred in telling the jury to "sign the appropriate forms and come on back." After the jury's inquiry, the court should have either reinstructed the jury with CALJIC No. 4.60 and sent them back for further delibera-

tions or, if further deliberations would have been fruitless, declared a mistrial as to count I due to a hung jury.

> * * *
>
> In essence, the court decided that since the jury did not unanimously agree that entrapment existed, then defendant must be guilty of count I. [However, i]f the jury did not agree on *entrapment*, there was a *hung jury.*

*Id.* (citations omitted; emphases in original).

▮▮▮ In this case, the record reveals that although the circuit court orally instructed the jury as to the affirmative defense of entrapment and Defendant's burden to establish the defense by a preponderance of the evidence, the court did not instruct the jury that it was required to unanimously agree that all elements of the charged offenses had been established beyond a reasonable doubt before considering the entrapment defense.[13] Absent such instruction, the circuit court's affirmative answer to question No. 1 to Jury Communication No. 1 may have implied to the jurors that if they failed to reach agreement as to the affirmative defense of entrapment, they were required to return a guilty verdict, even if they had not unanimously determined whether the prosecution had established all the elements of the charged offenses beyond a reasonable doubt. *See People v. Morris,* 413 N.Y.S.2d at 757 ("Whenever an affirmative defense is raised, particular caution must be exercised to insure that the jury does not become confused and to insure that the prosecution's burden of proof is not diminished."). The court's

---

upon further deliberations and to poll a jury after a verdict is rendered but before it is recorded, the trial court carried its inquiry too far and risked the danger that it would coerce a verdict. The secrecy of jury deliberations should be closely guarded." *People v. McIntyre,* 222 Cal.App.3d 229, 271 Cal.Rptr. 467, 469 n. 1 (1990) (citations omitted).

**13.** The circuit court should have instructed the jury, in relevant part, that its deliberative process should include the following steps:

(1) For each count, decide whether all the elements of the charged offense have been established beyond a reasonable doubt.

(2) If the jury unanimously agrees that all the elements of the charged offense have not been established beyond a reasonable doubt, the jury

must acquit Defendant of the charged offense and consideration of the affirmative defense of entrapment is not required.

(3) If the jury unanimously agrees that all the elements of the charged offense have been established beyond a reasonable doubt, then the jury must consider the affirmative defense of entrapment. ˊIn such event,

(a) If the jury unanimously agrees that Defendant has proved, by a preponderance of the evidence, that entrapment occurred for a charged offense, the jury must acquit Defendant of that offense; and

(b) If the jury unanimously agrees that Defendant has not proved, by a preponderance of the evidence, that entrapment occurred for a charged offense, the jury must find Defendant guilty of the charged offense.

response was also misleading because, considered in light of the court's instruction that "[i]f [Defendant] has not proved by a preponderance of the evidence both elements of entrapment, then the defense of entrapment does not apply[,]" the jurors may have wrongly believed that if they failed to reach unanimous agreement as to the entrapment defense, the defense was not applicable and a guilty verdict was required. As indicated previously, if the jury unanimously agreed that the elements of a charged offense had been established by the prosecution beyond a reasonable doubt, but was unable to agree that the affirmative defense of entrapment had been established, by a preponderance of the evidence, as to the charged offense, no verdict could be reached.

## C.

The State points out that defense counsel did not object to the circuit court's answer to question No. 1 to Jury Communication No. 1 and, therefore, should not be allowed, on appeal, to complain about any error in the answer. Pursuant to HRPP Rule 52(b) (1996), however, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Moreover, the Hawai'i Supreme Court has stated that the "ultimate responsibility properly to instruct the jury lies with the circuit court and not with trial counsel." *Cullen*, 86 Hawai'i at 8, 946 P.2d at 962 (internal quotation marks omitted). Because the circuit court's answer to question No. 1 to Jury Communication No. 1 was prejudicially insufficient and misleading and affected Defendant's constitutional right to a unanimous verdict, we conclude that the circuit court plainly erred in giving its answer.

## CONCLUSION

Accordingly, we vacate that part of the September 26, 1997 Judgment that convicted and sentenced Defendant on Counts I, II, and III and remand for a new trial as to those counts. In all other respects, the Judgment is affirmed.