Ben JAZZABI, Plaintiff–Appellee,

v.

ALLSTATE INSURANCE COMPANY,
an Illinois corporation, Defendant–
Appellant.

Ben Jazzabi, Plaintiff–Appellant,

v.

Allstate Insurance Company,
an Illinois corporation,
Defendant–Appellee.

Nos. 00–35686, 00–36029.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 7, 2001.

Filed Jan. 29, 2002.

Lisa E. Lear, Bullivant Houser Bailey PC, Portland, OR, for the defendant-appellant.

Glen D. Mark, Portland, OR, for the plaintiff-appellee.

Before HUG, T.G. NELSON, and GOULD, Circuit Judges.

## OPINION

T.G. NELSON, Circuit Judge.

Ben Jazzabi ("Jazzabi") sued Allstate Insurance Company ("Allstate") for breach of contract because Allstate did not honor his claim under his fire insurance policy. Allstate argued that Jazzabi set the fire that gave rise to his claim, and therefore, Allstate had no obligation to honor Jazzabi's claim. Jazzabi prevailed in a jury trial in which the only issue was whether Jazzabi had burned down his own house. Allstate appeals the judgment, and Jazzabi separately appeals the district court's award of attorney's fees. We have jurisdiction pursuant to 28 U.S.C. § 1291. We reverse the judgment and remand for further proceedings.

## I. BACKGROUND

Jazzabi's house burned down, and he filed a claim under his fire insurance policy with Allstate. Allstate rejected the claim

on the grounds that Jazzabi had either started or consented to the fire, or had concealed material facts regarding it. Jazzabi sued Allstate for breach of contract.[1] Allstate did not dispute that Jazzabi had a valid policy and that Allstate had refused to honor his claim. Rather, Allstate relied on the affirmative defense of arson.[2] At trial, the parties stipulated to the fact that arson had caused the fire. The only question in genuine dispute was whether Jazzabi was the arsonist.

Accordingly, the district court instructed the jury to determine whether Jazzabi had started the fire. The court told the jurors that the case was over if they decided that Jazzabi was the arsonist, but that if they decided Jazzabi had not started the fire, they should award damages. The district court also instructed the jury that its verdict had to be unanimous.

The jury sent a note to the district court after deliberating for several hours, informing the court that there was "some confusion" regarding how the jury was to make its determination in favor of one or the other party. The note also requested clarification of the unanimity requirement. In essence, the note asked whether the jury had to unanimously agree that Jazzabi had *not* started the fire before the jury could reach the issue of damages.

The district court discussed the note with counsel and concluded that the jury could not reach the issue of damages until it had unanimously rejected Allstate's affirmative defense. The court recalled the jury for a supplemental instruction and instructed the jury that it had to come to

unanimous agreement regarding liability. The district court also specifically told the jury that it had to unanimously agree that Jazzabi was not the arsonist before it could reach the issue of damages. The instruction session was punctuated by questions from the jury and also was interrupted more than once when the court paused to discuss the substance of the instruction with a law clerk.

After the jurors again retired to deliberate, the district court reconsidered the unanimity issue and decided that the supplemental instruction had been incorrect. The court concluded that anything less than a unanimous jury finding that Jazzabi was the arsonist would constitute a "failure of proof" on All-state's part. Under this reasoning, Jazzabi would prevail unless the jury unanimously found that he was the arsonist.

Before the district court had an opportunity to again recall the jury, the jury returned a unanimous verdict for Allstate. The court then gave the jury a second supplemental unanimity instruction, telling the jury that if it could not unanimously agree that Jazzabi was the arsonist, "there's a failure of proof and you go ahead and decide the plaintiff's damages." The jury again retired for further deliberations, and shortly thereafter returned a unanimous verdict for Jazzabi. The district court entered judgment for Jazzabi. Jazzabi moved for an award of $41,658.50 in attorney's fees,[3] of which the district court awarded him only $20,000.00.

---

1. Jazzabi also sued Allstate for intentional infliction of emotional distress, but that claim did not reach the jury and is not relevant to this appeal.

2. "Arson" here does not mean criminal arson; it means "actively participated in and/or consented to the intentional causation of the

fire" in violation of an exclusion clause in Jazzabi's policy.

3. Substantive Oregon law, which controlled in this diversity case, authorized the court to award attorney's fees. *See* Or.Rev.Stat. § 742.061.

Allstate appealed the judgment, arguing that the district court should have accepted the jury's first verdict and that the court's second supplemental unanimity instruction was incorrect as a matter of law. Jazzabi also appealed, arguing that the district court erred in awarding him attorney's fees in an amount significantly less than what he sought.

We conclude that the district court's first instruction was correct as a matter of law and, correspondingly, that the second instruction was erroneous. We therefore reverse the judgment for Jazzabi. Because we reverse, we do not reach Jazzabi's appeal. We decline to reinstate the first verdict, however, because we conclude that cumulative error renders that verdict unreliable. We therefore remand the case for further proceedings.

## II. ANALYSIS

We review a district court's decision to give a supplemental jury instruction, and the formulation of such an instruction, for abuse of discretion.[4] However, we review de novo the question of whether a jury instruction misstates the law.[5]

### A. JURY UNANIMITY AS TO AFFIRMATIVE DEFENSES

We conclude that the district court's first supplemental instruction concerning jury unanimity in regard to affirmative defenses was correct as a matter of law.

■ ■ Neither party disputes that the jury's ultimate verdict had to be unanimous, or that Allstate would win if the jury unanimously decided that Jazzabi started the fire. The issue is whether the jury could find Allstate liable even if the jury did not unanimously reject Allstate's contention that Jazzabi had started the fire. Allstate's arson argument is an affirmative defense under substantive Oregon law,[6] which controls in this diversity case[7]. Thus, the legal question presented is whether a jury can find for a plaintiff even if the jury has not unanimously rejected a defendant's affirmative defense.

Allstate's argument reduces to the contention that the jury cannot find Allstate liable in breach until the jury unanimously disposes of "all issues affecting liability," including Allstate's affirmative defense. Jazzabi argues that because it is undisputed that he has established a prima facie case of breach, anything less than unanimous jury agreement that Jazzabi started the fire "is a failure of proof on Allstate's part and the jury must return a unanimous verdict for Plaintiff."

Relatively few cases have addressed this precise issue, but those we have located have ruled that a defendant cannot be held liable until the jury unanimously rejects an

---

4. See United States v. McIver, 186 F.3d 1119, 1130 (9th Cir.1999), cert. denied, 528 U.S. 1177, 120 S.Ct. 1210, 145 L.Ed.2d 1111 (2000); Beachy v. Boise Cascade Corp., 191 F.3d 1010, 1012 (9th Cir.1999), cert. denied, 529 U.S. 1021, 120 S.Ct. 1425, 146 L.Ed.2d 316 (2000).

5. Beachy, 191 F.3d at 1012.

6. See Minnesota Bond Ltd. v. St. Paul Mercury Ins. Co., 300 Or. 85, 706 P.2d 942, 943 (1985) (characterizing defendants' pleading that the

fire was started by an intentional act as an affirmative defense). In addition, the district court, Allstate, and Jazzabi all treated the arson argument as an affirmative defense throughout the trial.

7. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) (federal courts sitting in diversity apply state substantive law); Snead v. Metro. Prop. & Cas. Ins. Co., 237 F.3d 1080, 1090 (9th Cir.), cert. denied, —— U.S. ——, 122 S.Ct. 201, 151 L.Ed.2d 142 (2001).

affirmative defense.[8] Thus, the weight of existing authority favors All-state.

Most of these cases do not analyze the issue in any depth, however, and there does not seem to be any one rationale underlying the cases' holdings. Still, some of the cases deal with arguments advanced here. *Sanchez v. State*[9] relied on one of the same arguments Allstate makes: that permitting juries to find a defendant liable even in the absence of a unanimous rejection of an affirmative defense may discourage thorough jury deliberations and promote verdicts based on a simple majority vote.[10] This court has similarly recognized the importance of the unanimity requirement in fostering thorough jury deliberations:

> A rule which insists on unanimity furthers the deliberative process by requiring the minority view to be examined and, if possible, accepted or rejected by the entire jury. The requirement of jury unanimity thus has a precise effect on the fact-finding process, one which

gives particular significance and conclusiveness to the jury's verdict. Both the defendant and society can place special confidence in a unanimous verdict, and we are unwilling to surrender the values of that mode of fact-finding, or to examine the constitutional implications of an attempt to do so, absent a clear mandate in the [Federal Rules of Criminal Procedure] or a controlling statute.[11]

In addition, two cases explicitly rejected the "failure of proof" theory that Jazzabi makes and upon which the district court relied. One of these, *Baxter Healthcare Corp. v. Spectramed, Inc.*,[12] dealt with the argument in a conclusory fashion.[13] The other, *State v. Miyashiro*,[14] has the most extensive discussion of the affirmative defense unanimity issue of all the cases we have located.

In *Miyashiro*, the jury sent the court a note asking if unanimity was required to establish the defendant's affirmative defense of entrapment.[15] The court sent a

---

**8.** *See Baxter Healthcare Corp. v. Spectramed, Inc.*, 49 F.3d 1575, 1579–80, 1583–84 (Fed. Cir.1995) (affirming district court's refusal to enter judgment for plaintiff on two special interrogatories that set forth affirmative defenses when "the jury did not agree on answers" to the interrogatories); *State v. Miyashiro*, 90 Hawai'i 489, 979 P.2d 85, 97 (1999) ("As indicated previously, if the jury unanimously agreed that the elements of a charged offense had been established by the prosecution beyond a reasonable doubt, but was unable to agree that the affirmative defense of entrapment had been established, by a preponderance of the evidence, as to the charged offense, no verdict could be reached."); *People v. McIntyre*, 222 Cal.App.3d 229, 271 Cal. Rptr. 467, 470 (1990) (reversing trial court because "[i]n essence, the [trial] court decided that since the jury did not unanimously agree that entrapment existed, then defendant must be guilty of count I. [But,] [i]f the jury did not agree on entrapment, there was a hung jury."); *Sanchez v. State*, 23 S.W.3d 30, 32–34 (Tex.Crim.App.2000) (affirming reversal of trial court on basis that it had erred in

instructing the jurors that they could find in defendant's favor on the issue of sudden passion only if they were unanimous and that otherwise they would have to find against the defendants on that issue); *State v. Harris*, 89 R.I. 202, 152 A.2d 106, 109 (R.I.1959) ("If the jury could not agree upon defendant's [affirmative defense of] [in]sanity then no verdict could be reached.").

**9.** 23 S.W.3d 30 (Tex.Crim.App.2000).

**10.** *See id.* at 33–34.

**11.** *United States v. Lopez*, 581 F.2d 1338, 1341–42 (9th Cir.1978).

**12.** 49 F.3d 1575 (Fed.Cir.1995).

**13.** *See id.* at 1583–84. The *Baxter* court considered the "failure of proof" theory, but summarily rejected it with little discussion.

**14.** 90 Hawai'i 489, 979 P.2d 85 (1999).

**15.** *Id.* at 92.

response to the jury that could have been read to indicate that lack of unanimity on entrapment disposed of the defense and cleared the way for a finding of guilt.[16] The jury returned a guilty verdict shortly thereafter.[17] The Hawaii Intermediate Court of Appeals considered the argument that liability is presumptively established before the jury reaches an affirmative defense and that anything less than unanimous juror acceptance of an affirmative defense is therefore a "failure of proof," necessarily resulting in a verdict against the defendant.[18]

█ The *Miyashiro* court rejected this argument and instead held that "a defendant's guilt is the ultimate finding that a jury must make *after* determining whether the defendant has committed all the elements of the offense charged *and consid-*

*ering any affirmative defenses raised.*" [19] The court reasoned that because jurors who accept the defendant's affirmative defense must vote to acquit, while those who reject it must vote to convict, a jury split over an affirmative defense necessarily results in a hung jury.[20] This is essentially the same argument that Allstate advances.

█ █ We find the reasoning of *Miyashiro* persuasive. Under the *Miyashiro* rationale, elements and affirmative defenses are co-equal components of the jury's liability determination: Liability cannot be established until after the jurors unanimously agree that the elements are satisfied *and* they unanimously reject the affirmative defenses. This approach comports well with the constitutional and statutory mandates that federal juries return

16. *Id.* at 92, 96–97.

17. *Id.*

18. *See id.* at 94–95.

19. *Id.* at 95 (emphasis added).

20. *Id.* at 95. The *Miyashiro* court's analysis was largely framed by the arguments advanced in the separate opinions of Justice Blackmun and Justice Scalia in *McKoy v. North Carolina,* 494 U.S. 433, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990).

In his dissent from the majority's conclusion that North Carolina law impermissibly limited jurors' consideration of mitigating evidence in the sentencing phase of capital cases by allowing jurors to consider only those mitigating factors that they unanimously agreed were present, Justice Scalia argued that several of the Court's cases approved of jury-unanimity requirements in regard to affirmative defenses in capital cases. *Id.* at 467, 110 S.Ct. 1227 (Scalia, J., dissenting).

Justice Blackmun argued in his concurrence that the dissent "presumes that once the elements of an offense have been proved, the jury's failure to agree as to an affirmative defense results in a conviction ... but our

cases do not say that, and it is not at all clear that a conviction, rather than a hung jury, would be the outcome." *Id.* at 450–51, 110 S.Ct. 1227 (Blackmun, J., concurring). Justice Scalia countered that the law of at least one jurisdiction (New York) required jurors to determine guilt beyond a reasonable doubt before even considering affirmative defenses and, therefore, implied that a jury must find a defendant guilty if the jury had not unanimously rejected the affirmative defenses. *See id.* at 467 n. 4., 110 S.Ct. 1227

The two justices' disagreement was in regard to state law, and most, if not all, of the relevant state cases since *McKoy* have held that there can be no verdict until a jury unanimously either accepts or rejects an affirmative defense. *See supra* note 8. In addition, while criminal juries in New York are required to establish guilt beyond a reasonable doubt before even considering affirmative defenses, the underlying rationale of this rule is that allowing a jury to consider affirmative defenses before the jury determines that the elements are satisfied may compromise the presumption of innocence. *See People v. Morris,* 68 A.D.2d 893, 413 N.Y.S.2d 757, 757–58 (N.Y.App.Div.1979). New York cases have not extended this rationale to hold that a defendant is presumptively guilty when the jury is split on an affirmative defense.

unanimous verdicts in civil trials.[21] While it is true that these mandates do not mean that civil juries must reach unanimous agreement on all the "preliminary factual issues which underlie the verdict[,]" it is nonetheless safe to say that civil juries must "render unanimous verdicts on the ultimate issues of a given case[,]" not just the final verdict itself.[22]

Affirmative defenses often present ultimate issues because, as in this case, they frequently determine whether the defendant will be liable. Accordingly, requiring civil juries to come to unanimous agreement regarding affirmative defenses—either unanimous agreement that the defendant has failed to prove the defense, or unanimous agreement that the defendant has proved the defense, but nothing else— is consistent with the Seventh Amendment to the Constitution and Federal Rule of Civil Procedure 48.

Under the approach that Jazzabi urges, however, a jury can return a "unanimous" verdict even when the jury is split on a liability-determinative affirmative defense. This rule defeats the intent and rationale underlying the mandate that jury verdicts be unanimous, because liability might attach even though the jury had not unanimously agreed that a basis for liability exists. Such a result would render the requirement of unanimity a hollow one. It would also provide a disincentive for thorough jury deliberations and could undermine confidence in jury verdicts.[23]

Thus, requiring a civil jury to come to unanimous agreement one way or the other on an affirmative defense is more consistent with the requirement of overall jury unanimity than is Jazzabi's theory. Therefore, the better rule is to require a jury to unanimously reject an affirmative defense before the jury can conclude that the defendant is liable and go on to determine damages.

 This rule makes particular sense in this case. Allstate relied exclusively on an affirmative defense. The "ultimate issue" in the case, and the question presented to the jury, was whether Jazzabi had started the fire. Because the overall jury verdict hinged exclusively on whether Jazzabi had started the fire, the jury could not logically be split in regard to the affirmative defense and still unanimously find Allstate liable. Accordingly, the district court's first supplemental instruction was correct. The court's second supplemental instruction was correspondingly incorrect. We therefore reverse the judgment for Jazzabi.[24]

## B. THE FIRST SUPPLEMENTAL UNANIMITY INSTRUCTION

Normally, the foregoing conclusion might well lead us to simply instruct the district court to reinstate the first jury verdict. However, the record indicates

21. See Fed.R.Civ.P. 48 ("Unless the parties otherwise stipulate ... the verdict shall be unanimous[.]"); Murray v. Laborers Union Local No. 324, 55 F.3d 1445, 1451 (9th Cir. 1995) ("The Seventh Amendment requires jury verdicts in federal civil cases to be unanimous.").

22. McKoy, 494 U.S. at 449, 110 S.Ct. 1227 (Blackmun, J., concurring) (footnote omitted).

23. See Lopez, 581 F.2d at 1341–42.

24. See Gulliford v. Pierce County, 136 F.3d 1345, 1350 (9th Cir.1998) ("[i]f a jury instruction is erroneous, we will reverse the judgment unless the error is more probably than not harmless") (alteration in original) (internal quotation marks and citation omitted); Murphy v. City of Long Beach, 914 F.2d 183, 187 (9th Cir.1990) ("It is equally clear that erroneous jury instructions, as well as the failure to give adequate instructions, are also bases for a new trial.").

that the first supplemental instruction ultimately may have created as much jury confusion as it dispelled. We therefore have no confidence in the first verdict, even though the district court's first supplemental instruction was legally correct. Accordingly, we remand the case for further proceedings.

■■■ After the jury requested clarification, the district court had an obligation to "clear away the confusion 'with concrete accuracy.'" [25] The jury's confusion was in regard to how the unanimity requirement applied to the affirmative defense of arson. As previously discussed, in terms of the liability determination, an affirmative defense is analogous to an element. "Ordinarily, a general unanimity instruction is sufficient to instruct the jury that its verdict must be unanimous as to each element[.]" [26] In most cases, therefore, an element-specific unanimity instruction is not necessary. Indeed, this court has held that such an instruction should be given "only when it appears that there is a genuine possibility of jury confusion or that [liability] may occur as the result of different jurors concluding that the defendant committed different acts." [27]

■■■ This case is not one where the jurors could have based liability upon "different acts." To the contrary, the liability determination here was factually straightforward: the jury plainly understood that liability hinged on whether Jazzabi had started the fire on a particular day, at a particular time, and in a particular place. Furthermore, the "jury confusion" here probably did not warrant a specific unanimity instruction, because "jury confusion" refers to confusion over the factual basis for liability, not confusion over a legal standard such as the unanimity requirement.[28] Thus, this case does not present the type of circumstances we normally require to justify a specific unanimity instruction.

■■■ Nonetheless, the district court could hardly have avoided giving an element-specific unanimity instruction in this case. The only issue for the jury was whether the "element" of arson had been "satisfied." We therefore find no error in the giving of an element-specific unanimity instruction. However, the district court's instruction went beyond the "element" level and took the unanimity requirement to the next level of specificity and, in doing so, created jury confusion rather than dispelling it.

In its first supplemental instruction, the district court told the jury that "you first have to decide liability one way or another before you consider the issue of damages." This instruction was correct and, probably, adequate. The district court could have been more specific, and instructed the jury that it was required to unanimously decide the "arson" question "one way or another" before considering the issue of damages.

**25.** *McIver,* 186 F.3d at 1130 (quoting *United States v. McCall,* 592 F.2d 1066, 1068 (9th Cir.1979), and *Bollenbach v. United States,* 326 U.S. 607, 612–13, 66 S.Ct. 402, 90 L.Ed. 350 (1946)).

**26.** *United States v. Gonzalez–Torres,* 273 F.3d 1181, 2001 WL 1568373 at *4 (9th Cir.2001); *see also United States v. Kim,* 196 F.3d 1079, 1082 (9th Cir.1999) ("In the ordinary case, a general unanimity instruction suffices to instruct the jury that they must be unanimous on whatever specifications form the basis of the guilty verdict.")

**27.** *Kim,* 196 F.3d at 1082 (citations and internal quotation marks omitted).

**28.** *See Kim,* 196 F.3d at 1083 ("Kim's contention that the jury note in this case indicated anything more than confusion over the legal standards to be applied is pure speculation, which is insufficient to mandate a specific unanimity instruction.").

The district went even further, however, and attempted to specifically explain to the jury the two different ways in which the unanimity requirement applied to the arson defense, i.e., that the jury had to unanimously agree that Jazzabi was the arsonist in order to find for Allstate, and that the jury had to unanimously agree that Jazzabi was *not* the arsonist in order to find for Jazzabi. A review of the transcript of the instruction session shows that taking the unanimity instruction to this next level of specificity created confusion.

Despite our (hopefully) clear formulation of the two ways in which the unanimity requirement applies to an affirmative defense,[29] the legal distinction between the two, and their application to the questions facing the jury in this case, does not readily reduce to succinct and concise non-legal terminology.[30] Indeed, the transcript reveals that the district court struggled to find non-legal language to clearly and concisely instruct the jury. The slipperiness of the distinction the court attempted to draw for the jury is also illustrated by the fact that the court's instruction was punct-uated by questions from the jury demonstrating that the jurors had difficulty following the court's explanation.[31]

Other aspects of the instruction session also indicate that the session engendered juror confusion. For instance, at several points during the instruction, the court discussed the substance of the instruction with a law clerk in a way that seemed to add to the jurors' uncertainty. In addition, questions regarding the relationship of the unanimity requirement to the burden of proof and the preponderance of the evidence standard arose simultaneously, further complicating the issue.

 In sum, this case shows that over-instructing the jury carries its own risks,[32] even when the court is attempting to squarely answer the question that the jury has asked. Here, the district court's well-meaning attempts to answer the jury's unanimity question with a legally correct explanation does not seem to have "clear[ed] away the confusion with con-

**29.** We note that we have had considerable time during which to analyze and formulate the issues that the jury note presented, a luxury that the district court did not have.

**30.** The jury note demonstrates that the jury itself had some difficulty in succinctly formulating its question.

**31.** We do not fault the district court's efforts in this regard; we merely point out that the issue raised did not lend itself to the formulation of a brief, easily understood jury instruction.

**32.** *Cf. United States v. DeWolf,* 696 F.2d 1, 4 (1st. Cir.1982) (stating that, in a factually straightforward case, "[t]he cure for [boiler-plate instructions inadequate to the case at hand], however, is not to over-instruct."), *overruled on other grounds by Maine v. Moulton,* 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985), *as recognized by United States v. Bender,* 221 F.3d 265, 269 n. 3 (1st Cir.2000).

We note that the risk of instructing the jury into a state of confusion may arise whenever a district court attempts to parse the general unanimity instruction by individual elements—or within an element, as is the case here—and weighs against using specific unanimity instructions in straightforward cases such as this one. We do not mean to suggest, however, that element-specific unanimity instructions should not be used when they are necessary. Such instructions are plainly called for when the evidence is so complex or confusing as to create a risk that different jurors will base their liability determinations on different facts. *See United States v. Sanchez,* 914 F.2d 1355, 1360 (9th Cir.1990) ("A specific unanimity instruction is required where different jurors may have convicted a defendant based on the existence of different facts due to the complexity of the evidence, a discrepancy between the evidence and the indictment, or some other factor creating a real possibility of juror confusion.").

crete accuracy."[33] Indeed, the instruction seems to have had the opposite effect. We therefore have no confidence in the first verdict, and we remand to the district court rather than reinstating the first verdict.

## III. CONCLUSION

*The jury's second verdict was based on the erroneous second* supplemental instruction. The cumulative error resulting from the district court's first supplemental instruction leaves us with no confidence in the first verdict. Accordingly, we REVERSE the final judgement and REMAND the case to the district court for further proceedings consistent with this opinion. Our decision renders Jazzabi's appeal moot.

REVERSED and REMANDED. No costs allowed.

---

**33.** *McIver,* 186 F.3d at 1130 (internal quotation marks and citations omitted).