73 P.3d 668

STATE of Hawai'i, Plaintiff–Appellee,

v.

James Gavin BAXLEY, Defendant–Appellant.

No. 22805.

Supreme Court of Hawai'i.

July 29, 2003.

Walter R. Schoettle, on the briefs, Honolulu, formerly for defendant-appellant.

Tae Chin Kim, Honolulu, counsel of record for defendant-appellant.

Donn Fudo, Deputy Prosecuting Attorney, on the briefs, for plaintiff-appellee.

MOON, C.J., LEVINSON and NAKAYAMA, JJ., Circuit Judge ALM, Assigned by Reason of Vacancy, and ACOBA, J., Dissenting in Part and Concurring in Part.

Opinion of the Court by NAKAYAMA, J.

Defendant–Appellant James Gavin Baxley appeals from his acquittal, the Honorable Frances Q.F. Wong presiding, of attempted assault in the second degree, Hawai'i Revised Statutes (HRS) §§ 705–500 (1993) [1] and 707–711(1)(d) (1993) [2] (Count I), terroristic threatening in the first degree, HRS § 707–716(1)(d) (1993) [3] (Count II), and kidnapping, HRS § 707–720(1)(e) (1993) [4] (Count III), on the ground of lack of penal responsibility pursuant to HRS § 704–400 (1993).[5] Baxley argues that the circuit court: (1) erred by acquitting him of Count III, kidnapping, on the ground of mental disease, disorder, or defect excluding penal responsibility when there was insufficient evidence to prove the elements of kidnapping in the first instance; (2) erred by refusing to admit evidence regarding the possible existence of a surveillance videotape of the incident; (3) plainly erred by relying on records and materials gathered by the Adult Probation Division regarding his mental examination; and (4) erred by finding that, but for the victim's

actions, she would have suffered substantial bodily injury and/or death. We hold that this court lacks jurisdiction over this appeal and, therefore, dismiss Baxley's appeal.

## I. BACKGROUND

On January 11, 1999, Baxley was charged with attempted assault in the second degree, terroristic threatening in the first degree, and kidnapping for allegedly trapping and threatening to mutilate and kill Michelle Marciel, a 7–Eleven employee, on December 26, 1998.

On January 27, 1999, Baxley filed a motion giving notice that he would be relying on the defense of mental disease, disorder, or defect excluding penal responsibility [hereinafter, "insanity"] pursuant to HRS § 704–404 (1993 & Supp.1999).[6] The court, upon Baxley's motion, ordered a mental evaluation to determine whether Baxley was fit to proceed to trial. Pursuant to HRS § 704–404, the court appointed three qualified persons to examine

---

1.  HRS § 705–500 provides:
    (1) A person is guilty of an attempt to commit a crime if the person:
    (a) Intentionally engages in conduct which would constitute the crime if the attendant circumstances were as the person believes them to be; or
    (b) Intentionally engages in conduct which, under the circumstances as the person believes them to be, constitutes a substantial step in a course of conduct intended to culminate in the person's commission of the crime.
    (2) When causing a particular result is an element of the crime, a person is guilty of an attempt to commit the crime if, acting with the state of mind required to establish liability with respect to the attendant circumstances specified in the definition of the crime, the person intentionally engages in conduct which is a substantial step in a course of conduct intended or known to cause such a result.
    (3) Conduct shall not be considered a substantial step under this section unless it is strongly corroborative of the defendant's criminal intent.

2.  HRS § 707–711(1)(d) provides:
    (1) A person commits the offense of assault in the second degree if:
    . . . .
    (d) The person intentionally or knowingly causes bodily injury to another person with a dangerous instrument[.]

3.  HRS § 707–716(1)(d) provides:

(1) A person commits the offense of terroristic threatening in the first degree if the person commits terroristic threatening:
    . . . .
    (d) With the use of a dangerous instrument.

4.  HRS § 707–720(1)(e) provides:

    (1) A person commits the offense of kidnapping if the person intentionally or knowingly restrains another person with intent to:
    . . . .
    (e) Terrorize that person or a third person[.]

5.  HRS § 704–400 provides in relevant part:

    (1) A person is not responsible, under this Code, for conduct if at the time of the conduct as a result of physical or mental disease, disorder, or defect the person lacks substantial capacity either to appreciate the wrongfulness of the person's conduct or to conform the person's conduct to the requirements of law.

6.  HRS § 704–404 provides in relevant part:

    (1) Whenever the defendant has filed a notice of intention to rely on the defense of physical or mental disease, disorder, or defect excluding responsibility, or there is a reason to doubt the defendant's fitness to proceed, or reason to believe that the physical or mental disease, disorder, or defect of the defendant will or has become an issue in the case, the court may immediately suspend all further proceedings in the prosecution.

Baxley's mental condition. All three medical examiners found Baxley fit to proceed to trial. However, they also found that Baxley had a history of mental disorder and recommended that the court commit Baxley to the Hawai'i State Hospital for treatment. On May 24, 1999, the court found Baxley was fit to proceed with trial.

On June 2, 1999, Baxley filed a motion to dismiss the attempted assault and kidnapping charges, premised on the contention that the evidence was insufficient to support the charges. Baxley asserted that a surveillance camera was located on the premises, and the police neglected to obtain the videotape. He sought to introduce evidence that the tape existed and that it contained potentially exculpatory evidence, which would demonstrate that Baxley may not have made "jabbing" motions with the knife, thereby negating one of the elements of attempted assault. At the hearing on the motion, the 7–Eleven manager testified that the surveillance camera had not been working for approximately a year prior to and on the date of the incident involving Baxley. Moreover, the manager stated that the camera was located in a secured box and the key to open the box had been missing for an indeterminate time. Baxley argued that, with regard to the kidnapping charge, there was no evidence that he restrained Marciel or commanded that she enter and remain in the back storage room. No witnesses were called and no evidence was adduced at the hearing to support this argument. On July 30, 1999, the court denied Baxley's motion to dismiss and ruled that it would not disturb the preliminary hearing finding that probable cause existed to show Baxley committed attempted assault, terroristic threatening, and kidnapping. The court also found that there was no evidence that a videotape existed, and thus there was no videotape for the police to recover.

At the jury-waived trial, the following evidence was adduced. On December 26, 1998, Baxley walked into the 7–Eleven store, picked up a 40–ounce bottle of beer, and walked out of the store ignoring the assistant manager's request that Baxley pay for the beer. The assistant manager called the police to report the theft. At approximately 10:00 p.m., police officers returned to the store with Baxley and asked the employees if Baxley was the man they observed taking the beer. After positively identifying Baxley, the police officers made Baxley pay for the beer, escorted Baxley out of the store and told him not to return. Later that same evening, Baxley returned. Marciel was behind the counter at the cash register when she observed Baxley entering the store. Marciel immediately called 911. Baxley entered the store, walked directly toward Marciel and stated, "Give me my fucking tape player." Baxley demanded that Marciel return his tapes and his tape player. Marciel did not know what Baxley was talking about and told Baxley so. Baxley eventually pulled a knife, with a three-inch blade, out of his pocket and stated, "What would you do if I fucking killed you?" Baxley proceeded to climb up on the counter, "jabbed" the knife in Marciel's direction several times, and threatened to kill her. Marciel eventually crouched behind the counter, crawled out from under the counter, and headed to the safety of the back storage room where she could shut a door, keep Baxley out, and still have a limited view of Baxley and the store. Baxley approached the door and Marciel could hear Baxley threatening to mutilate her if she called the police. Marciel did not attempt to escape out the rear service door because the area behind the store was enclosed by three walls. If Baxley arrived at the back first, Marciel would have been trapped outside with no escape route.

The court also heard testimony from Olaf Gitter, Ph.D., who was appointed by the court to examine Baxley. Dr. Gitter opined that Baxley was "cognitively and volitionally and substantially impaired at the time of the alleged offenses." Dr. Gitter diagnosed Baxley as suffering from schizophrenic disorder, alcohol dependence, and adverse reaction to medication. He recommended that Baxley be committed to the state hospital for treatment.

At the end of the prosecution's case, Baxley moved for a judgment of acquittal on the ground of insufficient evidence for the attempted assault and kidnapping charges.

The court denied Baxley's motion and subsequently acquitted Baxley of all charges on the ground of insanity pursuant to HRS § 704–400. Judgment was entered on August 25, 1999 and Baxley timely appealed.

## II. STANDARD OF REVIEW

### A. Jurisdiction

■ "The existence of jurisdiction is a question of law that we review de novo under the right/wrong standard." *Lester v. Rapp*, 85 Hawai'i 238, 241, 942 P.2d 502, 505 (1997) (quoting *State ex. rel. Bronster v. Yoshina*, 84 Hawai'i 179, 183, 932 P.2d 316, 320 (1997)).

### B. Sufficiency of the evidence

■ [E]vidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction; the same standard applies whether the case was before a judge or jury. The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact.

*State v. Young*, 93 Hawai'i 224, 230, 999 P.2d 230, 237 (2000) (citations omitted) (brackets in original).

*State v. Valdivia*, 95 Hawai'i 465, 471, 24 P.3d 661, 667 (2001). We have stated that substantial evidence as to "every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion." *State v. Jenkins*, 93 Hawai'i 87, 99, 997 P.2d 13, 25 (2000).

## III. DISCUSSION

Baxley argues that the circuit court erred by (1) acquitting him of Count III, kidnapping, on the ground of insanity, (2) refusing to admit evidence regarding the possible existence of a surveillance videotape of the incident, (3) relying on records and materials gathered by the Adult Probation Division regarding his mental examination, and (4) finding that, but for the victim's actions, she would have suffered substantial bodily injury and/or death.

Because Baxley would remain committed to the custody of the Director of Health based on the circuit court's acquittals as to Counts I and II, which were supported by substantial evidence that would have warranted convictions but for Baxley's affirmative defense of insanity, and because Baxley has not challenged the sufficiency of the evidence supporting Counts I and II on appeal, he is not aggrieved by the circuit court's acquittal of Count III, and, therefore, this court lacks jurisdiction to address the sufficiency of evidence supporting Count III. Moreover, this court lacks jurisdiction over the consideration of the Adult Probation Division records because there is no statutory provision that allows the issue of dangerousness to be appealed directly to this court following an acquittal.

### A. Because Baxley is not aggrieved, this court lacks appellate jurisdiction to review Baxley's appeal from an acquittal by reason of insanity.

■ Appellate jurisdiction "in a criminal case is purely statutory and exists only when given by some constitutional or statutory provision." *State v. Kalani*, 87 Hawai'i 260, 261, 953 P.2d 1358, 1359 (1998) (quoting *State v. Fukusaku*, 85 Hawai'i 462, 490, 946 P.2d 32, 60 (1997) (quoting *State v. Wells*, 78 Hawai'i 373, 376, 894 P.2d 70, 73, *reconsideration denied*, 78 Hawai'i 474, 896 P.2d 930 (1995))). HRS § 641–11 (1993) [7] provides the statutory basis upon which a defendant may appeal from a judgment of the circuit court. Particularly significant in this statute is the requirement that the defendant be "aggrieved." Baxley is not an aggrieved party

7. HRS § 641–11 provides:

Any party deeming oneself aggrieved by the judgment of a circuit court in a criminal matter, may appeal to the supreme court, subject to chapter 602 in the manner and within the time provided by the Hawai'i Rules of Appellate Procedure. The sentence of the court in a criminal case shall be the judgment. All appeals, whether heard by the intermediate appellate court or the supreme court, shall be filed with the clerk of the supreme court and shall be subject to one filing fee.

because his acquittal does not adversely impact his rights.

■ An aggrieved party has been defined by this court in a civil context as "one who is affected or prejudiced by the appealable order." *Waikiki Malia Hotel, Inc. v. Kinkai Properties, Ltd.,* 75 Haw. 370, 393, 862 P.2d 1048, 1061 (1993) (quoting *Montalvo v. Chang,* 64 Haw. 345, 351, 641 P.2d 1321, 1326 (1982)). In the context of a family court decision, this court has stated that an aggrieved party is

> [o]ne whose legal right is invaded by an act complained of, or whose pecuniary interest is directly affected by a 'decree or judgment. One whose right of property may be established or divested. The word "aggrieved" refers to a substantial grievance, a denial of some personal or property right, or the imposition upon a party of a burden or obligation.

*State ex rel. Marsland v. Town,* 66 Haw. 516, 522 n. 3, 668 P.2d 25, 30 n. 3 (1983) (quoting Black's Law Dictionary 60 (5th ed.1979)); *see also S. Utsunomiya Enters., Inc. v. Moomuku Country Club,* 75 Haw. 480, 494, 866 P.2d 951, 960 (1994) (defining "[a]n aggrieved party [as] one who is affected or prejudiced by the appealable order"), *reconsideration denied,* 76 Hawai'i 247, 75 Haw. 580, 871 P.2d 795 (1994); *Inter–Island Resorts, Ltd. v. Akahane,* 44 Haw. 93, 99, 352 P.2d 856, 860 (1960) (noting that an appeal may not be taken by a party not aggrieved by the judgment appealed from).

A defendant may also be entitled to an appeal under other limited conditions. In *State v. Minn,* 79 Hawai'i 461, 464, 903 P.2d 1282, 1285 (1995), the prosecution argued that this court lacked jurisdiction under HRS § 641–11 because the defendant failed to obtain permission before bringing an interlocutory appeal. This court explained that because double jeopardy was at issue, the court had appellate jurisdiction. *Id.* The *Minn* court relied upon an earlier case in which we expressly adopted the rule that we would review appeals affecting a criminal defendant's rights under the double jeopardy clause because it "involve[d] important rights which would be irreparably lost if review had to await final judgment." *State v. Baranco,*

77 Hawai'i 351, 353–54, 884 P.2d 729, 731–32 (1994). In short, without such review, the defendant's right against double jeopardy could not be protected.

Because Baxley would remain in the custody of the Director of Health pursuant to his acquittals as to Counts I and II, he has failed to demonstrate that he has been prejudiced by virtue of his acquittal of Count III. This court, therefore, is without jurisdiction to address the substance of Baxley's arguments.

**B. This court lacks jurisdiction over the consideration of the Adult Probation Division records because a post-acquittal hearing must be requested if a criminal defendant disputes a finding of present dangerousness.**

■ Baxley argues that the trial court reviewed records unavailable to defense counsel in making its commitment determination. He asserts that records compiled by the Adult Probation Division and reviewed for purposes of determining mental status at the time the crimes were committed cannot be used in connection with the determination of dangerousness for purposes of commitment. Baxley failed to request a post-acquittal hearing to address the issue of dangerousness in a proceeding separate from the trial proceedings. Because Baxley did not follow the procedural mechanisms set forth in HRS 704–411(a) (1993), we cannot review this aspect of the trial court's decision.

HRS § 704–400 provides a mechanism through which an individual can avoid penal responsibility based upon a finding of mental disease, disorder, or defect. *See* HRS § 704–400. HRS § 704–402(1) states that "[p]hysical or mental disease, disorder, or defect excluding responsibility is an affirmative defense." HRS § 704–402(1); *see also State v. Young,* 93 Hawai'i 224, 231, 999 P.2d 230, 237 (2000) (recognizing that HRS § 704–400 is an affirmative defense). A defendant who raises this defense is entitled to three court-appointed examiners who are required to examine and report "upon the physical and mental condition of the defendant." HRS § 704–404(2). This was the procedure followed by the trial court. Each of the three

examiners concluded that Baxley was "significantly impaired in his ability to appreciate the wrongfulness of his behavior (cognitive capacity) and to conform his behavior to the requirements of law (volitional capacity)."[8] The trial court issued a verdict of acquittal based, in part, on the testimony of Baxley's own expert, Dr. Gitter. Thus, Baxley properly raised and presented the affirmative defense, and the court's findings of fact and conclusions of law reflect its determination that Baxley was not penally responsible for his conduct.

The legal effect of an acquittal is to find the defendant not responsible for the conduct charged. HRS § 704–411. In the event of such an acquittal, the court shall enter one of three orders.[9] Implicated in this case is HRS § 704–411(a), in which the court "shall order a defendant to be committed to the custody of the director of health to be placed in an appropriate institution . . . if the court finds that the defendant presents a risk of danger to oneself or others and the defendant is not a proper subject for conditional release[.]" HRS § 704–411(a). Although evidence supporting an acquittal predicated on penal irresponsibility may be "relevant to and probative of present dangerousness, they are not substitutes" for a finding of present dangerousness. Commentary to HRS § 704–411 (1993). Thus, it is incumbent upon the court to differentiate between present dangerousness and the mental state of the defendant at the time of the events leading to the underlying charges. The Commentary to HRS § 704–411 points out that, although the HRS § 704–404 examiners are primarily focused on the conduct related to the underlying charges, "they may be able to indicate the risks which the defendant presents." Commentary to HRS § 704–411. The evidence the court relied upon, in committing Baxley to the care of the Director of Health, included the testimony of Baxley's expert witness. In his written report, which

was received in evidence at the trial, Dr. Gitter stated:

In my opinion, the defendant presents a moderate risk of danger to the person of others and to himself. This opinion is based on the instant alleged offenses, his documented history of becoming assaultive when under the influence of alcohol, his documented history of alcohol dependence and his history of non-compliance with psychiatric outpatient treatment, his history of intermittent acute psychotic episodes and his history of one hanging attempt two years ago and his perceived suicidality when first admitted to OCCC.

The trial court fulfilled its responsibilities under HRS § 704–411.

The proper course of action by a party who disagrees with a court's finding of dangerousness is a post-acquittal hearing in the trial court. Commentary to HRS § 704–411. The Commentary expressly states that, "[w]here either the prosecution or the defense believes that the evidence at the trial (including stipulations) is not dispositive of the issue of present danger, each is free to move for a separate post-acquittal hearing on that issue." *Id.* There is no statutory provision pursuant to which a defendant following an acquittal may appeal the issue of dangerousness directly to this court.

Baxley argues that the circuit court erred by improperly relying upon the records of the Adult Probation Division in determining present dangerousness. The remedy Baxley seeks is vacation of the court's finding and a remand to an untainted judge. Because we lack appellate jurisdiction to hear this case, we may not comment on whether the court erred or not. The proper route for Baxley is to seek a post-acquittal hearing to determine the issue of present dangerousness.

8. The three examiners were James Tom Greene, Ph.D., David S. Roth, M.D., and Olaf K. Gitter, Ph.D. Baxley called Dr. Gitter to testify regarding Baxley's substantial incapacity to appreciate the wrongfulness of his conduct and his substantial incapacity to conform his conduct to the law.

9. The three orders are: commitment to the custody of the director of health upon a finding of present dangerousness, HRS § 704–411(1)(a); conditional release upon a finding that the defendant can be given proper supervision and care, HRS § 704–411(1)(b); and discharge from custody upon a finding of the absence of present dangerousness, HRS § 704–411(1)(c).

**136**

## IV. CONCLUSION

Based on the foregoing, we hold that this court lacks jurisdiction over Baxley's appeal. We, therefore, dismiss this appeal for want of appellate jurisdiction.

Opinion by ACOBA, J., Dissenting in Part and Concurring in Part.

I disagree that this court lacks jurisdiction to review this case on the following grounds: (1) Jurisdiction exists to decide the claims of Defendant–Appellant James Gavin Baxley (Defendant) under Hawai'i Revised Statutes (HRS) § 602–5(7) (1993) for the promotion of justice; (2) Plaintiff–Appellee State of Hawai'i (the prosecution) must prove each element of a charged crime beyond a reasonable doubt even if the defendant is acquitted by reason of insanity; (3) in the absence of such proof the presumption of innocence applies and, thus, acquittal in this case does not moot an appeal of an underlying conviction; and (4) the finding of dangerousness at trial and resulting committal to the custody of the director of health is subject to appeal pursuant to HRS § 602–5(7) to avoid alleged due process violations. Exercising jurisdiction in this case, I would concur in affirming the judgment but on the grounds set forth herein.

### I.

The relevant facts follow. Michelle Marciel testified that, on December 27, 1998, she was working at a "7–Eleven" store in Ka'a'awa on O'ahu, when Defendant entered at approximately 2:00 a.m. At that time, Marciel's co-worker, Simata Taele, was in the restroom. When Defendant approached her, Marciel was standing behind the register counter. Defendant said, "Give me my f___g tape player." Marciel responded that she did not know what he was talking about.

Pulling a buck knife out of his pocket, Defendant asked, "What would you do if I f___g killed you[?]" Marciel, who was two to three feet away at the time, walked backward. According to Marciel, Defendant made a jabbing motion with the knife as he spoke to her. Defendant then "boosted him-

self up on top the counter" and said, "Yes, I think I'm going to kill you."

Marciel crouched behind the counter and, in "[a]lmost a crawling motion," headed to a door that led to a utility room. Marciel yelled to Taele that Defendant had a knife. Once behind the door, Marciel held it shut. Marciel related that she ran into the utility room to escape from Defendant and that he never ordered her into the room.

Through a window in the door, Marciel could see Defendant walk around the counter and toward the door. Defendant shook the knife at Marciel, screamed obscenities, and threatened that "if [she] called the police . . ., he would come back to the store and kill [her]." Marciel had been behind the door for thirty to forty seconds before Defendant shook the knife at her.

Taele exited the restroom one minute after hearing Marciel yell to her that Defendant had a knife. As she did so, Defendant was leaving the store. Taele looked through the window in the utility room door, but did not see anyone.

### II.

#### A.

On January 11, 1999, Defendant was charged with Attempted Assault in the Second Degree, HRS §§ 705–500 (1993) and 707–711(1)(d) (1993) (Count I); Terroristic Threatening in the First Degree, HRS § 707–716(1)(d) (1993) (Count II); and Kidnapping, HRS § 707–720(1)(e) (1993) (Count III). On January 23, 1999, pursuant to HRS § 704–404 (1993 & Supp.1999), Defendant notified the prosecution of his intent to rely on the defense of mental irresponsibility and moved for a mental examination.

Without objection from the prosecution, the Circuit Court of the First Circuit (the court) granted Defendant's motion. In accordance with HRS § 704–404(2) (Supp. 1999), the court appointed a panel of three qualified experts, Drs. Olaf Gitter, James Tom Greene, and David S. Roth, to examine Defendant. All three experts concluded, pursuant to HRS § 704–404(4)(c) (Supp. 1999), that Defendant was fit to stand trial,

but opined, pursuant to HRS § 704–404(4)(d) (Supp.1999), that at the time of the alleged offense, he was unable to appreciate the wrongfulness of his behavior and to conform his behavior to the requirements of law. The prosecution did not dispute the reports. The court found Defendant fit to proceed and set the matter for trial.

### B.

Prior to trial, Defendant moved to dismiss Counts I and III "on the grounds [sic] that the investigating police officers, acting in bad faith, failed to recover the surveillance videotape of the alleged offense[.]" Defendant issued a subpoena to the prosecution for the videotape.

Judge Michael Town presided over the motion to dismiss. At the June 21, 1999 hearing, the prosecution explained that "there isn't a videotape of the incident[.]" Emily Waiolama, a branch manager for the Ka'a'awa 7–Eleven, testified that the 7–Eleven store had not used the video surveillance camera "for a very, very long time" and that the camera had not been running for "possibly a year[.]" Blake Yokotake, human resources manager for 7–Eleven Hawai'i, testified at the July 19, 1999 continued hearing that the company uses video surveillance cameras as a matter of protocol, but that he did not know whether the camera was working on the morning of the alleged incident.

Regarding Count I, assault, defense counsel argued that the failure of the police to look for a surveillance tape was "not fair," considering the "potentially exculpatory" nature of the tape, and in light of the complaining witness's allegedly contradictory statements regarding the attempted assault.[1] Defense counsel also clarified that he believed Count III, kidnapping, should be dismissed because there was not "any evidence of restraint[.]"

Judge Town denied the motion to dismiss, explaining that "there just isn't any evidence that there was a tape at all." In his July 30, 2000 order denying Defendant's motion to dismiss Counts I and III, Judge Town entered a written finding to the effect "that there was no evidence that a videotape of the December 27, 1998 incident existed."

### III.

### A.

Defendant waived his right to a jury trial. On July 20, 1999, at the beginning of trial, Defendant sought to call Waiolama and Yokotake as witnesses in his case-in-chief to testify regarding the possible existence of a videotape. Judge Frances Wong, who presided over the trial and some of the motions pertinent to this appeal, pointed out that "Judge Town actually made a finding that the tapes did not exist at the relevant times."

After informing the court that the witnesses would testify to the same information elicited at the June 21, 1999 and July 19, 1999 hearings, the defense maintained that, depending on what the possible videotapes may have shown, Defendant may not be guilty of attempted assault, and may not have "made any attempt to restrain the complaining witness and therefore commit[ ] the offense of kidnapping." Judge Wong concluded "that this basically is a [Hawai'i Rules of Penal Procedure (HRPP) ] Rule 16 issue which was dealt with by Judge Town at the pre-trial motions stage[,]" and prohibited Defendant from calling the two witnesses to testify.

### B.

In the middle of trial, on July 26, 1999, Defendant subpoenaed the custodian of records of the Adult Probation Division to appear in court the following morning to "bring ... all documents and records compiled in connection with the mental health evaluation of Defendant." A deputy attorney general appeared and moved to quash the subpoena. Defense counsel indicated that he sought the records in order to make them available during the testimony of Dr. Gitter, who had been a member of the original evaluation panel, and who had relied on the records to author his report.

---

1. *See infra* note 10.

The court granted the motion to quash based in part on the late issuance of the subpoena. In the court's written order, it ruled that "[s]ection 806–73 of the [HRS] provides that adult probation records are confidential, and can only be divulged under the circumstances set forth by statute. Defendant failed to demonstrate that he was statutorily entitled to access the records."

### C.

At the close of the prosecution's case, Defendant moved to dismiss Counts I and III, arguing there was insufficient evidence to support either charge. The court denied the motion.

The court entered findings of fact and conclusions of law, indicating that it found Defendant not guilty by reason of mental disease, disorder, or defect, pursuant to HRS § 704–400 (1993), and ordered that Defendant be committed to the Hawai'i State Hospital. The findings and conclusions state in part, as follows:

### FINDINGS OF FACT

1. *Pursuant to Sections 704–400(1) and 704–401 H.R.S. the Court finds that defendant has met its [sic] burden of proving by a preponderance of the evidence that at the time of the offenses, Defendant was substantially impaired volitionally and cognitively as a result of his mental illness (schizophrenia) and alcohol dependency.*

. . . .

3. The Court finds that a careful review of the record does show that Defendant has an underlying mental illness, which was not, by itself, caused by Defendant's dependency on alcohol or an illegal substance.

4. The Court finds, therefore, *that Defendant is acquitted on the basis of mental disease, disorder, or defect pursuant to Section 704–400, Hawai'i Revised Statutes and is committed to the custody of the Director of the Department of Health for placement at the Hawaii State Hospital.*

5. *The Court finds that Defendant is extremely dangerous,* despite having periods of apparent calmness and lucidity, and despite periodic cessation of overt psychotic symptoms.

. . . .

7. *The Court finds that Defendant has established a pattern of threatening family members and others in the community.*

8. *The Court finds no difficulty in predicting dangerousness because of the very acts committed by Defendant which comprise the instant charges.*

9. The Court finds that this was a watershed event which would allow any court the ability to find that *Defendant is extremely dangerous to the community.*

10. The Court finds that Defendant was actively psychotic on the night of this event and extremely inebriated. Nevertheless, Defendant was able to perform very intentional acts which required some amount of volition and planning.

11. The Court finds that *if it were not for the Victim's actions, she would have suffered substantial bodily injury and/or death as a result of Defendant's behavior.*

. . . .

### CONCLUSIONS OF LAW

. . . .

ACCORDINGLY DEFENDANT IS ACQUITTED, AS A RESULT OF PHYSICAL OR MENTAL DISEASE, DISORDER OR DEFECT, PURSUANT TO SECTION 704–400, H.R.S. AND COMMITTED TO THE DIRECTOR OF THE DEPARTMENT OF HEALTH FOR PLACEMENT INTO THE HAWAI'I STATE HOSPITAL.

(Emphases added.) The court did not enter any findings or conclusions regarding proof of the crimes charged. The August 25, 1999 form Judgment of the court stated, *inter alia,* as follows:

The Defendant having been acquitted by the court . . . of the offense(s) charged on the ground of physical or mental disease, disorder or defect excluding responsibility,

and the court having read reports submitted pursuant to HRS Section 704-404 and having heard the medical evidence *at the trial* or hearing on the date indicated above.

The court finds that the Defendant presents a risk of danger to himself/herself or to the person or property of others; and that Defendant is not a proper subject for conditional release.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Defendant is acquitted in this case on the ground of physical or mental disease, disorder or defect excluding responsibility.

. . . .

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that, pursuant to HRS Section 704-411(1)(a), Defendant *is hereby committed to the custody of the Director of Health to be placed in an appropriate institution for custody, care and treatment.* . . .

(Emphases added.)

## IV.

Defendant contends on appeal that (1) the prosecution failed to establish sufficient evidence of kidnapping, Count III; (2) "[t]he trial court erroneously refused to admit relevant evidence pertaining to the possible existence of a videotape of the incident" as to attempted assault, Count I, and kidnapping; (3) the court erroneously relied on probation records in finding that Defendant is "extremely dangerous"; and (4) the court's finding that, but for Marciel's actions, she would have suffered substantial injury and/or death was not supported by sufficient evidence.

The prosecution asserts that this court does not have jurisdiction to hear the instant case under HRS § 641-11 (1993), as relied on by Defendant, because, "[w]here a Defendant is *acquitted* by the judge's ruling, that represents a resolution in Defendant's favor, of the factual elements of the charged offense." (Emphasis in original.)

## V.

## A.

Initially, as raised by the prosecution, it must be determined whether jurisdiction exists to review Defendant's points on appeal. Generally, jurisdictional bases for review by this court are set forth in our statutes. In *State v. Kealaiki,* 95 Hawai'i 309, 22 P.3d 588 (2001), we enumerated several bases for jurisdiction from a circuit court judgment, stating that, in a criminal case, "a defendant may appeal from the judgment of the circuit court," *id.* at 312, 22 P.3d at 591, (1) pursuant to HRS § 641-11, (2) "from an interlocutory order[,]" *id.* at 313, 22 P.3d at 591-92, pursuant to HRS § 641-17, (3) by virtue of the collateral order doctrine, *see id.* at 316-17, 22 P.3d at 595-96, (4) by applying for a writ of prohibition or mandamus under HRS § 602-5(4), *see id.* at 313, 22 P.3d at 592, and (5) by requesting exercise of this court's supervisory powers pursuant to HRS § 602-4, *see id.* at 317, 22 P.3d at 596.[2]

HRS § 641-11 (1993) provides in part that "[a]ny party deeming oneself aggrieved by the *judgment* of a circuit court in a criminal matter, may appeal to the supreme court[.]" (Emphasis added.) "Judgment" is defined in HRS § 641-11 as "[t]he sentence of the court in a criminal case[.]" Thus, by the terms of HRS § 641-11, the appealable action of the circuit court is the sentence. As we confirmed in *Kealaiki,* "the sentence of the court

**2.** In *Kealaiki,* the defendant had entered a conditional plea under HRPP Rule 11(a)(2), which allows a defendant, with the approval of the trial court and consent of the prosecution, to enter a conditional plea of guilty or nolo contendere, reserving the right of the defendant, on appeal from the judgment, to seek review of the adverse determination of any specified pretrial motion. *See* 95 Hawai'i at 312, 22 P.3d at 591. If the defendant prevails on appeal, he or she may withdraw the conditional plea. *See id.* at 314, 22 P.3d at 593. However, the trial court in *Kealaiki* had also granted defendant a deferred acceptance of no contest (DANC) plea, deferring acceptance of his plea. We held that this court lacked appellate jurisdiction to decide the correctness of the trial court's order denying the defendant's motion to suppress under the conditional plea order when the trial court had, under the DANC plea order, deferred acceptance of the plea. *See id.* at 311-12, 315, 22 P.3d at 590-91, 594. Under the circumstances, "grounds for review [were] either inapplicable or subversive of the purposes served by a deferred plea or conditional plea order." *Id.* at 312, 22 P.3d at 591.

in a criminal case is the judgment from which an appeal is authorized[,]" and where "[t]here [is] no conviction and sentence ..., there can be no appeal under HRS § 641–11[.]" 95 Hawai'i at 312, 22 P.3d at 591 (internal quotation marks and citations omitted). Accordingly, inasmuch as Defendant appeals from the judgment of acquittal, for which there is no "sentence," there can be no jurisdiction under HRS § 641–11.

HRS § 641–17 (1993)[3] allows for interlocutory appeals and is an exception to the final judgment requirement in HRS § 641–11. However, HRS § 641–17 requires that the order appealed from be non-final, and that the defendant apply to the circuit court for permission to take such an appeal. Inasmuch as Defendant's judgment of acquittal is final, and Defendant did not apply for an interlocutory appeal, this basis for jurisdiction is inapplicable.

Similarly, Defendant cannot invoke jurisdiction under the collateral order doctrine, another exception to the final judgment requirement of HRS § 641–11. *See State v. Baranco*, 77 Hawai'i 351, 353, 884 P.2d 729, 731 (1994). "[U]nder the collateral order exception, an interlocutory order is appealable if it: (1) fully disposes of the question at issue; (2) resolves an issue completely collateral to the merits of the case; and (3) involves important rights which would be irreparably lost if review had to await a final judgment." *Id.* at 353–54, 884 P.2d at 731–

32. Like jurisdiction under HRS § 641–17, the order appealed from must be interlocutory. As noted *supra*, Defendant's judgment of acquittal is final, and, accordingly, the collateral order doctrine is unavailable to Defendant as a basis of jurisdiction.

In addition to appellate review specified in HRS chapter 641, jurisdiction may be available under HRS chapter 602. Pursuant to HRS § 602–5(4) (1993), original jurisdiction lies in this court to issue writs of prohibition or mandamus. *See, e.g., State v. Oshiro*, 69 Haw. 438, 441–42, 746 P.2d 568, 570–71 (1987) (allowing the prosecution to seek judicial review of the trial court's grant of a DANC plea by way of a writ of mandamus and/or prohibition, where the prosecution did not have the right to appeal the granting of the plea under HRS § 641–13, and ultimately determining that such a writ will not issue).

Although, like the prosecution in *Oshiro*, preclusion of review under HRS § 641–11 seemingly renders Defendant without "other means to adequately redress the wrong or to obtain the requested action[,]" 69 Haw. at 442–43, 746 P.2d at 570–71, Defendant does not allege that the court acted beyond its jurisdiction, as would be required in a prohibition application,[4] or request that the trial court perform a ministerial duty owed to Defendant, or demonstrate a "clear and undisputed right to relief" as necessary in a mandamus application,[5] or request relief for either pursuant to HRS § 602–5(4).[6] Ac-

---

**3.** HRS § 641–17 provides in pertinent part as follows:

> Upon application made within the time provided by the rules of the supreme court, an appeal in a criminal matter *may be allowed* to a defendant from the circuit court to the supreme court, subject to chapter 602, *from a decision denying a motion to dismiss or from other interlocutory orders, decisions, or judgments*, whenever the judge in the judge's discretion may think the same advisable for a more speedy termination of the case. The refusal of the judge to allow an interlocutory appeal to the appellate court shall not be reviewable by any other court.

(Emphases added.)

**4.** "The writ of prohibition is an extraordinary remedy, the object of which is not to cure a mere legal error or to serve as a substitute for appeal, but to restrain a judge of an inferior court from acting beyond or in excess of his jurisdiction."

*Honolulu Advertiser, Inc. v. Takao*, 59 Haw. 237, 241, 580 P.2d 58, 62 (1978) (citations omitted).

**5.** "[A] writ of mandamus will not issue unless the petitioner demonstrates 1) a clear and undisputed right to relief; and 2) a lack of other means to adequately redress the wrong or to obtain the requested action." *Oshiro*, 69 Haw. at 441, 746 P.2d at 570 (citing *State ex rel. Marsland v. Shintaku*, 64 Haw. 307, 640 P.2d 289 (1982) (per curiam)).

**6.** HRS § 602–5(8) (1993) provides in pertinent part that "[a]ll cases addressed to the jurisdiction of the supreme court or of the intermediate appellate court shall be filed with the supreme court as shall be provided by rule of court." Hawai'i Rules of Appellate Procedure (HRAP) Rule 21(a) requires, in pertinent part, as follows:

> Application for a writ directed to a judge shall be made by filing a petition with the clerk of

cordingly, HRS § 602–5(4) does not afford a basis for jurisdiction in the present appeal.

Another potential basis of jurisdiction rests in this court's supervisory powers over courts of inferior jurisdiction. HRS § 602–4 (1993) states that "[t]he supreme court shall have the general superintendence of all courts of inferior jurisdiction to prevent and correct errors and abuses therein where no other remedy is expressly provided by law." This was the basis for review in *State v. Fields*, 67 Haw. 268, 686 P.2d 1379 (1984). In that case, this court asserted supervisory powers under HRS § 602–4 to prevent the defendant, a probationer, from being subjected to a warrantless search, which was a condition of her probation. *See id.* at 273, 276, 686 P.2d at 1384, 1386–87. Deciding that "the situation at hand represents the rare case where it 'would not be in the public interest' to compel the issue 'to wend its way through the appellate process[,]'" *id.* at 276, 686 P.2d at 1386 (quoting *Gannett Pac. Corp. v. Richardson*, 59 Haw. 224, 227, 580 P.2d 49, 53 (1978)), this court asserted HRS § 602–4 jurisdiction even though "a strong commitment to the prudential rules shaping the exercise of our jurisdiction has resulted in a sparing use of this extraordinary power," *id.* (citing *Gannett Pac. Corp.* at 226–27, 580 P.2d at 53).

### B.

Under the appropriate circumstances, the exercise of our supervisory powers over the courts under HRS § 602–4 provides a basis for correcting error. However, we are directly concerned in this case with the fact that Defendant appears to be without process for obtaining judicial review of alleged trial errors supposedly affecting proof of the underlying charges against him, because of the court's affirmative defense acquittal.

the supreme court with proof of service on the respondent judge, all parties to the action in the trial court, and the attorney general. The petition shall contain: (i) a statement of facts necessary to an understanding of the issues presented; (ii) a statement of issues presented and of the relief sought; and (iii) a statement of reasons for issuing the writ.

While this court does not exalt form over substance, *see State v. Poohina*, 97 Hawai'i 505, 509, 40 P.3d 907, 912 (2002), the requested form of a

In that connection, jurisdiction to decide Defendant's claims may appropriately rest on HRS § 602–5(7). HRS § 602–5(7) provides that

> [t]he supreme court shall have jurisdiction and powers ... [t]o make and award such judgments, decrees, orders and mandates, issue such executions *and other processes, and do such other acts and take such other steps as may be necessary to carry into full effect the powers which are or shall be given to it by law or for the promotion of justice in matters pending before it.*

(Emphasis added.) HRS § 602–5(7) codifies the inherent powers of the supreme court, *see Farmer v. Administrative Dir. of the Court*, 94 Hawai'i 232, 241, 11 P.3d 457, 466 (2000), which "'are the powers to create a remedy for a wrong even in the absence of specific statutory remedies[,]'" *id.* at 240, 11 P.3d at 465 (quoting *CARL Corp. v. Department of Educ.*, 85 Hawai'i 431, 460, 946 P.2d 1, 30 (1997)) (brackets omitted).

*Farmer* declared that "'inherent power of the court is the power to protect itself; *the power to administer justice whether any previous form of remedy has been granted or not;* the power to promulgate rules for its practice; and the *power to provide process where none exists.*'" *Id.* at 241, 11 P.3d at 466 (quoting *State v. Moriwake*, 65 Haw. 47, 55, 647 P.2d 705, 711–12 (1982)) (emphases added). In *Farmer*, this court noted that the *Moriwake* court indicated such "inherent or implied powers" stems from the judicial power delegated to the courts by article VI, section 1 of the Hawai'i Constitution. *Id.* (internal quotation marks and citation omitted). Invoking HRS § 602–5(7), this court fashioned in *Farmer* a remedy in order to afford a defendant "an opportunity to challenge the lifetime revocation of his [or her]

petition for an extraordinary writ is designed to ensure that the necessary information and notice to parties is set forth in an orderly manner, *see State v. Allen*, 7 Haw.App. 89, 90 n. 1, 744 P.2d 789, 791 n. 1 (1987), *overruled on other grounds by Dan v. State*, 76 Hawai'i 423, 427, 879 P.2d 528, 532 (1994) (chastising defendant for not following the format for an opening brief, which was provided in the appendix of the HRAP, when the petition was not helpful to appellate review).

driver's license" in the district court, upon proof that his or her record could no longer support the revocation period, and when no statutory or court rule gave him or her authority to do so, because justice so required. *Id.* at 239–41, 11 P.3d at 464–66.[7]

## VI.

Similarly, in the instant case, Defendant has no opportunity to challenge alleged trial errors with respect to the underlying criminal charges. *See supra.* On their face, such errors go to the validity and sufficiency of the evidence upon which the challenged charges were apparently sustained. Under our penal code and our state constitution, Defendant is entitled to raise such errors.

Under the penal code, it is well settled that the prosecution has the burden of proving each element of the offense beyond a reasonable doubt. *See* HRS § 701–114(1) (1993) ("[N]o person may be convicted of an offense unless the following are proved beyond a reasonable doubt: ... [e]ach element of the offense[.]"). This reflects the due process requirement under the United States Constitution that, "[u]nder our legal system, the burden is always upon the prosecution to establish every element of crime by proof beyond a reasonable doubt, never upon the accused to disprove the existence of any necessary element." *State v. Cuevas,* 53 Haw. 110, 113, 488 P.2d 322, 324 (1971) (citing *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), for the proposition that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he [or she] is charged"). *See also State v. Pone,* 78 Hawai'i 262, 892 P.2d 455 (1995); *State v. Iosefa,* 77 Hawai'i 177, 182, 880 P.2d 1224,

1229 (App.1994) ("It is also well-settled that the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution protects an accused against a conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he [or she] is charged." (Internal quotation marks and citations omitted.)); *Patterson v. New York,* 432 U.S. 197, 211 n. 13, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977).

In consonance with these propositions, in amending the law to provide that "[p]hysical or mental disease, disorder, or defect excluding responsibility is an affirmative defense," HRS § 704–402(1) (1993), the Supplemental Commentary on HRS § 704–402 instructs that "the establishing of insanity as an affirmative defense *does not relieve the State of its burden of proof of the elements of the offense.*" (Quoting Sen. Stand. Comm. Rep. No. 384, in 1982 Senate Journal, at 1112.) (Emphasis added.)

## VII.

Consequently, pleading an affirmative defense does not diminish the requirement that the prosecution prove all the necessary elements of the crime charged. *See State v. Anderson,* 58 Haw. 479, 482, 572 P.2d 159, 161 (1977) (explaining that, because entrapment is an affirmative defense, the issue of entrapment "is separate and apart from the proof of all the elements of an offense[,]" and "the pleading of entrapment does not in any way lessen the requisite number of the elements to be proven by the state or the degree of quantum of the proof" (internal quotation marks and citations omitted)). Therefore, in the instant case, the assertion of the affirmative defense did not nullify the requirement that every element of the crimes

7. HRS § 602–5(7) has been applied in other situations. In *State v. Arlt,* 9 Haw.App. 263, 833 P.2d 902 (1992), the Intermediate Court of Appeals (ICA) invoked HRS § 602–5(7) to modify the conviction and sentence of a defendant against whom there was insufficient evidence of first degree robbery, and remanded the case to the circuit court with instructions to enter a judgment of the lesser included charge of theft in the fourth degree. *See id.* at 277–78, 833 P.2d at 909–10. The ICA stated that "[s]ince there is no statute or constitutional provision in Hawai'i which specifically vests in the appellate courts the express authority to affirm, reverse, remand, vacate, or set aside any judgment, decree, or order of a court brought before them, such authority presumably derives from [HRS § 602–5(7)]." *Id.* at 277, 833 P.2d at 910. Moreover, in *Kahalekai v. Doi,* 60 Haw. 324, 590 P.2d 543 (1979), this court relied upon HRS § 602–5(7) to determine whether there was jurisdiction to entertain an original action challenging the results of a general election amending the state constitution. *See id.* at 330, 590 P.2d at 548.

charged must be proven. *See Anderson*, 58 Haw. at 482, 572 P.2d at 161; *State v. Miyashiro*, 90 Hawaiʻi 489, 499, 979 P.2d 85, 95 (App.1999).

Moreover, "[i]n the absence of proof [of each element of the offense beyond a reasonable doubt], the innocence of the defendant is presumed." HRS § 701–114(2) (1993). This presumption is constitutionally grounded. *See State v. Samonte*, 83 Hawaiʻi 507, 518–19, 928 P.2d 1, 12 (1996) ("[A] criminal defendant has a constitutional right to a presumption of innocence." (Citing *United States v. Ross*, 33 F.3d 1507, 1519 (11th Cir.1994), *cert. denied*, 515 U.S. 1132, 115 S.Ct. 2558, 132 L.Ed.2d 812 (1995).)). As *State v. Tanaka*, 92 Hawaiʻi 675, 994 P.2d 607 (App.1999) affirmed,

> [t]he right to a fair trial is a fundamental liberty guaranteed by the fourteenth amendment to the United States Constitution. The presumption of innocence, though nowhere articulated in the United States Constitution, is a basic component of a fair trial under our system of criminal justice, and its enforcement lies at the foundation of our administration of the criminal law.

*Id.* at 681, 994 P.2d at 618 (citing *Estelle v. Williams*, 425 U.S. 501, 503, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976)). Thus, the presumption of innocence remains until the ultimate issue of the defendant's guilt is resolved, which occurs only after the trier-of-fact (1) has determined that the prosecution has met its burden of proving every element of the crime charged beyond a reasonable doubt, and (2) has determined whether the existence of the affirmative defense has been established by the defendant. *See Miyashiro*, 90 Hawaiʻi at 499, 979 P.2d at 95.

## VIII.

### A.

On appeal, then, the fact that Defendant was acquitted on the grounds of physical or mental disease, disorder, or defect, is not dispositive of whether the prosecution proved its case. As observed by the United States Supreme Court in *Patterson*, "[i]t would be an abuse of affirmative defenses, as it would be of presumptions in the criminal law, if the purpose or effect [of such defenses] were to unhinge the procedural presumption of innocence which historically and constitutionally shields one charged with crime." 432 U.S. at 211 n. 13, 97 S.Ct. 2319 (quoting *People v. Patterson*, 39 N.Y.2d 288, 383 N.Y.S.2d 573, 347 N.E.2d 898, 909–10 (1976) (Breitel, J., concurring, joined by Jones, J.)). A finding of guilt of the commission of the acts charged is implicit in the determination that physical or mental disease, disorder, or defect excluded legal responsibility. *See United States v. Ashe*, 478 F.2d 661, 662 (D.C.Cir.1973) (reviewing the sufficiency of evidence following the defendant's appeal from a verdict of not guilty by reason of insanity); *State v. Marzbanian*, 2 Conn.Cir.Ct. 312, 198 A.2d 721, 724–25 (1963) (determining that, in the absence of an express statutory grant, the court had jurisdiction to consider an appeal from a defendant who was acquitted on the grounds of insanity and challenged the sufficiency of evidence at trial).

### B.

Contrary to the majority's view, then, acquittal on the basis of his affirmative defense does not mean Defendant was not adversely affected or aggrieved. *See* majority opinion at 133, 73 P.3d at 671. For, Defendant claims that there was insufficient evidence for the charge of kidnapping in Count III, an offense separate and apart from the assault and threatening offenses charged in Counts I and II, respectively. *See* majority opinion at 133, 73 P.3d at 671. Thus, in order to afford a defendant the opportunity to challenge the implicit underlying determination of guilt, process by way of a review of his or her points should be granted under HRS § 602–5(7).[8]

Therefore, in cases where the defendant has been acquitted on the affirmative defense of lack of responsibility, jurisdiction over claims of error with respect to any underly-

---

8. In that regard, although a finding of guilt as to the charges is implied in an acquittal based on a mental disease, disorder, or defect, trial courts should make express findings as to whether the prosecution has proven each charge beyond a reasonable doubt.

ing offenses is afforded by our power to administer justice under HRS § 602-5(7). Defendant's appeal of the underlying charges, then, is not "moot," as urged by the prosecution. For the same reasons, it is incorrect to hold, as the majority does, that Defendant is not "prejudiced by virtue of his acquittal" as to Count III, the kidnapping charge, because he "would remain in the custody of the Director of Health" on Counts I and II. Majority opinion at 134, 73 P.3d at 672.

### IX.

Because I would find jurisdiction, Defendant's appeal points are considered *infra.*

### A.

Disputing his kidnapping conviction, Defendant maintains, as his first point, that "there is absolutely no evidence of any physical restraint." A claim of insufficient evidence is reviewed to determine whether the prosecution adduced "[s]ubstantial evidence as to every material element of the offense charged." *State v. Dow,* 96 Hawai'i 320, 323, 30 P.3d 926, 929 (2001) (internal quotation marks and citation omitted). HRS § 707-720(1)(e) states that "[a] person commits the offense of kidnapping if the person intentionally or knowingly *restrains* another person with intent to ... [t]errorize that person or a third person." (Emphasis added.) "Restrain" is defined, in part, as "*to restrict* a person's movement in such a manner as *to interfere substantially with the person's liberty:* ... [b]y means of force, threat,* or deception[.]" HRS § 707-700 (1993) (emphases added).

The plain language of the statute does not mandate proof that a defendant use *physical* restraint or any particular words in order to effectuate a kidnapping. There is evidence that Defendant's acts substantially interfered with Marciel's liberty, despite the absence of physical contact or specific words. For example, after Defendant jabbed a knife at Marciel, "boosted himself" onto the counter

behind where she stood, and told her he was going to kill her, Marciel took refuge in a utility room. She could see Defendant walk toward the door, shake the knife at her, and threaten to kill her. Defendant's acts prevented Marciel from moving about freely. Plainly, there was substantial evidence that his conduct "interfere[d] substantially with [her] liberty." HRS § 707-700.

### B.

Defendant does not challenge the sufficiency of the evidence supporting the terroristic threatening charge in Count II. He maintains, however, that he "is not guilty of the offense of kidnap[p]ing because ... he did nothing to restrain Ms. Marciel in addition to the conduct for which he was found guilty of the offense of Terroristic Threatening." [9] For this proposition, he relies on *State v. Caprio,* 85 Hawai'i 92, 937 P.2d 933 (App. 1997), in which the ICA explained that a "'kidnapping that is necessarily and incidentally committed during'" another crime "'cannot be the basis of a charge of kidnapping in addition to a charge'" for the other crime. *Id.* at 105, 937 P.2d at 946 (quoting *State v. Correa,* 5 Haw.App. 644, 649, 706 P.2d 1321, 1325 (1985)).

*Caprio,* however, is distinguishable. There, the ICA agreed with the defendant's contention that he could not be convicted of both kidnapping and sexual assault where the defendant used a leg restraint and "did not terminate his leg restraint of [the complaining witness] until all the alleged sexual assaults had been committed." *Id.* at 106, 937 P.2d at 947. The ICA explained "that the jury could not rely on the same leg restraint to convict him of both the kidnapping and sexual assault charges." *Id.*

In the instant case, there is evidence Defendant committed terroristic threatening *prior to* Marciel fleeing into the storage room. Before Marciel entered the storage room, Defendant jabbed at her with a knife and asked, "What would you do if I f___g killed you[?]" and stated, "I think I'm going to kill you." After Marciel entered the stor-

---

**9.** Defendant was charged under HRS § 707-716(1)(d), which reads, "A person commits the offense of terroristic threatening in the first degree if the person commits terroristic threatening: ... [w]ith the use of a dangerous instrument."

age room, Defendant continued to threaten to kill Marciel with the knife. Once in the room, her movement was restrained. Such restraint was not "necessarily and incidentally committed *during*" all the acts of terroristic threatening, *id.* at 105, 937 P.2d at 946 (emphasis added), because some of the threats occurred prior to the restraint.

## X.

Secondly, Defendant maintains that the trial court "erred in excluding evidence that a videotape might have existed" and on that basis he seeks to have the attempted second degree assault and kidnapping charges vacated.[10] The heart of the videotape issue is twofold: (1) whether Judge Town erroneously denied Defendant's motion to dismiss and, relatedly, (2) whether Judge Wong improperly precluded Defendant from calling Waiolama and Yokotake.

After listening to the evidence, Judge Town found that a videotape of the incident did not exist. We review a trial court's pretrial factual findings under the clearly erroneous standard. *See State v. Balberdi,* 90 Hawai'i 16, 20–21, 975 P.2d 773, 777 (App. 1999). "'A finding of fact is clearly erroneous when (1) the record lacks substantial evidence to support the finding or (2) despite substantial evidence in support of the finding, the appellate court is left with a definite and firm conviction that a mistake has been made.'" *Id.* (quoting *State v. Anderson,* 84 Hawai'i 462, 466, 935 P.2d 1007, 1011 (1997)).

Judge Town's finding was supported by substantial evidence. Waiolama testified at the hearing on the motion to dismiss that the 7–Eleven store had not used the videotape surveillance camera for "possibly a year." She and Yokotake both stated that they did not know whether the camera was working at the time of the incident. There is no basis for a definite or firm conviction that a mistake was made. Under the circumstances, Judge Town did not abuse his discretion in denying the motion to dismiss. *See State v.*

*Chong,* 86 Hawai'i 282, 288 n. 2, 949 P.2d 122, 128 n. 2 (1997) ("'A trial court's ruling on a motion to dismiss an indictment is reviewed for an abuse of discretion.'" (Quoting *State v. Mendonca,* 68 Haw. 280, 283, 711 P.2d 731, 734 (1985).)).

Judge Wong's decision precluding Defendant from calling Waiolama and Yokotake was based on Judge Town's finding that the videotape did not exist. She concluded that Judge Town's finding was the law of the case. *See Wong v. City & County of Honolulu,* 66 Haw. 389, 396, 665 P.2d 157, 162 (1983) (explaining that "'law of the case' ... refers to the usual practice of courts to refuse to disturb all prior rulings in a particular case" (citations omitted)). Therefore, Judge Wong was bound by Judge Town's finding unless she had a cogent reason to overturn his finding. *See Stender v. Vincent,* 92 Hawai'i 355, 362, 992 P.2d 50, 57 (2000). Defense counsel informed the court, in an offer of proof, that his witnesses would testify to the same information they provided at the motion to dismiss, and, as such, there was no cogent reason to overturn Judge Town's finding. Thus, Judge Wong properly refused to overturn the prior ruling.

## XI.

Third, Defendant requests the court's finding that he is extremely dangerous "be vacated and the matter be remanded[.]" He contends that the court erroneously quashed his subpoena duces tecum, which sought copies of the probation records upon which the court relied.

Although not raised by the parties, the majority contends that this court has no jurisdiction to review the issue of present dangerousness following an acquittal, *see* majority opinion at 135, 73 P.3d at 673, because "[t]he proper action to be taken by a party who disagrees with a court's finding of dangerousness is [to request] a post-acquittal hearing" pursuant to HRS § 704–411(2)

---

10. Defendant declares that he should have been allowed to present evidence of the "possible destruction" of a videotape because such a videotape might have "resolved the discrepancy" between Marciel's statements to the police that

"Defendant waived [sic] the knife ... and pointed [it] ... at her" and "cocked [it] back like he was going to come forward and jab [her]," and her testimony at trial that Defendant actually jabbed at her.

(1993), majority opinion at 135, 73 P.3d at 673. Because the majority holds that there is no express right to appeal from an order committing a defendant under HRS § 704–411(1)(a) (1993), it concludes that the only remedy for Defendant lies in a post-acquittal hearing.

I cannot agree with this position. I believe we have jurisdiction to consider the correctness of the court's order committing Defendant to the custody of the director of health and, thus, may consider findings as to Defendant's dangerousness raised in Defendant's last two points.

## A.

The post-trial procedures under HRS chapter 704 provide that, following trial and a determination of lack of responsibility, the court shall: (1) order the defendant to be committed to the custody of the director of health, *see* HRS § 704–411(1)(a), (2) order the defendant be conditionally released, *see* HRS § 704–411(1)(b) (1993), or (3) discharge the defendant from custody, *see* HRS § 704–411(1)(c) (1993). The court must make its order "on the basis of the [panel] report made pursuant to section 704–404, if uncontested, *or* the medical or psychological evidence given at the trial *or* at a separate hearing[.]" HRS § 704–411(1) (emphases added). HRS § 704–411(1)(a) directs that courts commit an acquitted defendant to the custody of the director of health "to be placed in an appropriate institution for custody, care, and treatment if the court finds that the defendant presents a risk of danger to oneself or others and that the defendant is not a proper subject for conditional release[.]" [11]

In this case, the court did commit Defendant under HRS § 704–411(1)(a). In doing so, it relied on two of the three bases for an order—the reports made pursuant to HRS § 704–404 which were not contested and medical or psychological evidence given at trial. *See supra* page 133, 73 P.3d page 671. In its findings of fact, the court referenced

the information provided at trial. HRS chapter 704 does not contain an express provision with respect to an appeal of such an order. Here, the court did not convene, nor did the parties move for, a separate post-acquittal hearing to take evidence on dangerousness, as is alternatively allowed by HRS § 704–411(1)(a).

## B.

But there is nothing in the Hawai'i Penal Code (Code) which directs that such a party must resort to a post-acquittal hearing, especially when, as in this case, the issue was tried during the trial phase. The prosecution did not dispute the reports. The Code expressly instructs that the court may base its dangerousness finding on the uncontested reports of the expert panel *or* on medical or psychological evidence given at trial, *see* HRS § 704–411, as was the case here. This is because "[a]lthough the evidence at trial will be primarily devoted to a determination of the defendant's physical and mental condition at the time of the alleged offense, in certain cases the examiners may be able to indicate the risks which the defendant presents." Commentary on HRS § 704–411.

It would be duplicative and counterproductive to mandate that a defendant move for a separate proceeding on the issue of dangerousness, when the reports of the experts were not disputed and/or the issue of dangerousness was tried at the trial, and neither the court nor the parties sought "a separate post-acquittal hearing for the purpose of taking evidence" pursuant to HRS § 704–411(2). As the commentary confirms, "[t]he Code, therefore, provides in [HRS § 704–411] that the disposition order may be made on the basis of medical evidence *given either at the trial or* at a separate hearing." Commentary on HRS § 704–411 (emphasis added). Hence, the Code does not require that Defendant's disagreement with the court's finding of dangerousness be raised only in a post-acquittal hearing.

11. Defendant does not contend that the court erred in neglecting to make findings of fact on the issue of conditional release, although the court did state in the Judgment of Acquittal and Commitment that Defendant "is not a proper subject for conditional release." However, a trial court should endeavor to make such a finding to reflect full compliance with the statutory requirements.

## C.

Jurisdiction under HRS § 602–5(7) for the purpose of reviewing the court's order of committal is appropriate, inasmuch as, as stated previously, the "inherent power of [this] court is the ... power to provide process where none exists." *Farmer*, 94 Hawai'i at 240, 11 P.3d at 465 (citation omitted).[12] The authority to commit a defendant, acquitted on the basis of physical or mental disease, disorder, or defect, is subject to the defendant's due process rights under article 1, section 5 of the Hawai'i Constitution. "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana*, 504 U.S. 71, 80, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992). Commitment, even for persons mentally ill or dangerous, "constitutes a significant deprivation of liberty that requires due process protection." *Jones v. United States*, 463 U.S. 354, 361, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983).

After an initial order of committal under HRS § 704–411, application for release must await ninety days following the initial order of commitment.[13] *See* HRS § 704–412.[14] A defendant subject to due process violations in the determination of committal would have no method of obtaining review of the original committal order. Hence, justice requires that this court allow process by exercising jurisdiction pursuant to HRS § 602–5(7) over the claim that error occurred with respect to the committal order.

## XII.

Having determined that jurisdiction exists to consider Defendant's challenge of findings concerning dangerousness, it is to be noted that the burden of proof required for commitment where a defendant is acquitted by reason of mental disease, disorder, or defect is a preponderance of the evidence. *See Thompson v. Yuen*, 63 Haw. 186, 188, 623 P.2d 881, 883 (1981). Based on the court's findings, there was a preponderance of the

12. HRPP Rule 40, which provides for post-conviction proceedings, provides no avenue of relief for Defendant. HRPP Rule 40(a) states that these proceedings "shall be applicable to *judgments of conviction* and to *custody based on judgments of conviction* [.]" (Emphases added.) As stated previously, there was no conviction.

HRS § 602–5(5) (1993) provides that this court has jurisdiction to issue writs of habeas corpus pursuant to certain restrictions set forth in HRS chapter 660. *See also Thompson v. Yuen*, 63 Haw. 186, 623 P.2d 881 (1981) (reviewing commitment of the petitioner pursuant to HRS § 704–411(1)(a) after a post-trial hearing, on constitutional and admissibility of hearsay evidence grounds). However, habeas relief is a collateral attack on the original judgment and is thus available, not as a method of appealing the decision of the court, but only when "persons are *unlawfully* restrained of their liberty[.]" HRS § 660–3 (1993) (emphasis added.) *See In re Gamaya*, 25 Haw. 414, 417 (1920) ("It is well settled that a writ of habeas corpus will not be permitted to perform the functions of a writ of error or appeal for the purpose of reviewing errors or irregularities in proceedings of a court having jurisdiction over the person and the subject-matter.")

13. If the defendant is committed, he or she may apply for conditional release or discharge under HRS § 704–412(2) (1993) after ninety days from the date of the order of committal. After an application is filed under HRS § 704–412(2), the court is required to appoint three qualified examiners to report upon the physical and mental condition of the defendant and grant the defendant's petition if the court is satisfied that granting the petition may be done without danger to the defendant or to the person or property of others. *See* HRS § 704–415 (1993).

If the court is not satisfied, the court must order a hearing to further consider the defendant's petition. *See id.* If the petition is ultimately denied, the defendant must wait for a year to file another application, measured from the date of the preceding hearing. *See* HRS § 704–412.

There is no express provision allowing appeal from denial of these petitions. However, in *State v. Miller*, 84 Hawai'i 269, 933 P.2d 606 (1997), this court reviewed a circuit court order denying an acquitee's motion for discharge or conditional release made under HRS § 704–412(2) without discussion of the jurisdictional basis for review. *Thus, this court has impliedly permitted a direct appeal from an order denying release following committal, even in the absence of an express provision permitting appeal from the order.* The exercise of jurisdiction in *Miller* would appear to be justified on the same basis set forth in the text, *supra*, for exercising jurisdiction on challenges to an initial committal order.

14. The burden rests with the applicant to show that he or she "may safely be released on the conditions applied for or discharged." HRS § 704–415. If a defendant is not successful, he or she is foreclosed from seeking release for a year.. *See* HRS § 704–412(2).

evidence, aside from the probation records, to support the conclusion that Defendant should be committed.

In *Thompson*, this court stated that "[t]he district court judge was required to commit appellant under HRS § 704–411(1)(a) where the sanity commission report prepared pursuant to section 704–404 went uncontested and the State met its burden of proof." *Id.* at 189, 623 P.2d at 884. The reports submitted pursuant to HRS § 704–404 were, in the instant case, uncontroverted. In addition to Dr. Gitter's report discussed *infra*, Dr. Greene opined, "It is my clinical impression that [Defendant] is gradually getting more psychotic and irresponsible in his attitudes, and does show potential for more dangerous behavior towards others or property." Similarly, although Dr. Roth observed that "[Defendant] does not appear to present ... a danger at the present time based on his current mental status[,]" he recommended that "[i]t is highly advisable that the patient receive treatment, perhaps by being committed to the authority of the Director of Health." [15]

Dr. Gitter reported that "[D]efendant presents a moderate risk of danger to the person of others and to himself." His opinion on Defendant's dangerousness "is based on the instant alleged offenses, [Defendant's] ... history of becoming assaultive when under the influence of alcohol, ... his history of intermittent acute psychotic episodes and his history of at least one hanging attempted two years ago and his perceived suicidality when first admitted to O[ahu] C[ommunity] C[orrectional] C[enter]." Such reports were sufficient for the court to find that Defendant was a danger to others. *See Thompson*, 63 Haw. at 189, 623 P.2d at 884.

Additionally, the court rendered other findings, reflecting that Defendant "has established a pattern of threatening family members and others in the community" (Finding 7), that it had "no difficulty in predicting dangerousness because of the very acts committed by Defendant which comprise the instant charges" (Finding 8), that the incident "was a watershed event which would allow any court the ability to find that Defendant is extremely dangerous to the community" [16] (Finding 9), and that, "if it were not for [Marciel]'s actions, she would have suffered bodily injury and/or death as a result of Defendant's behavior" (Finding 11).

As a result, the court did not rely solely on the probation records to reach the conclusion that Defendant is dangerous—it also considered the panel reports, witnesses' testimony, and evidence received, which included the report of Dr. Gitter. Assuming, *arguendo*, that the court erroneously considered the records, such consideration was harmless error under the circumstances.

## XIII.

### A.

As to the argument that the court should not have quashed his subpoena for probation records, at trial, Defendant failed to object to the court's consideration of the records [17] and, therefore, he waives the issue on appeal. *See State v. Ferm*, 94 Hawaiʻi 17, 27, 7 P.3d 193, 203 (App.2000) (citing *Tabieros v. Clark Equip. Co.*, 85 Hawaiʻi 336, 379 n. 29, 944 P.2d 1279, 1322 n. 29 (1997), for the proposition that "failure to object to admission of evidence at trial will waive the point on appeal"). Moreover, as previously mentioned, defense counsel sought the probation records "so that they would be available for Dr. Gitter," the defense expert witness, when he testified.[18] As represented by counsel, Dr.

---

15. Drs. Greene's and Roth's reports were not admitted at trial but are part of the record.

16. Notably, although the court found Defendant "extremely dangerous," the court needed only to find that "[D]efendant presents a *risk of danger* to oneself or others and that the defendant is not a proper subject for conditional release," HRS § 704–411(a) (emphasis added), in order to commit him to the custody of the director of health.

17. In its oral findings, the court indicated that it relied on the records of the Adult Probation Division, among other evidence, to reach the conclusion that Defendant was not guilty by reason of mental disease, disorder, or defect. Defendant concedes that he did not object to the court's findings at that time.

18. Dr. Gitter testified without the use of the records.

Gitter did review the records at the probation department.

## B.

Defendant's request for vacation of the finding of dangerousness is frivolous in light of Defendant's stance that he is not challenging the court's decision to commit him to the Hawai'i State Hospital. Commitment is statutorily premised on the danger Defendant poses to himself and/or others. *See* HRS § 704–411. But, Defendant neither challenges the commitment nor most of the findings regarding his dangerousness.

## C.

Finally, Defendant claims that the finding that "but for [Marciel]'s actions, she would have suffered substantial bodily injury and/or death," "was not supported by the evidence[.]" On the contrary, there is substantial evidence in the record that supports the finding. *See supra.*

## XIV.

For the foregoing reasons, I respectfully dissent as to jurisdiction and, exercising jurisdiction, I would affirm the August 25, 1999 judgment on the grounds stated herein.